STATE of Missouri, Plaintiff-Respondent,

v.

Jay D. BASHE, a/k/a John Dover, Defendant-Appellant.

No. 13055.

Missouri Court of Appeals, Southern District, Division One.

July 21, 1983.

Motion For Rehearing or to Transfer to Supreme Court Denied Aug. 10, 1983.

Application to Transfer Denied Oct. 18, 1983.

John D. Ashcroft, Atty. Gen., George W. Cox, III, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Cynthia MacPherson, Mountain Grove, for defendant-appellant.

GREENE, Chief Judge.

Defendant, Jay D. Bashe, was jury-convicted of capital murder, § 565.001, RSMo 1978, and sentenced to life imprisonment without possibility of parole prior to his serving a minimum of 50 years of his sentence. On appeal, Bashe alleges prejudicial trial court error in a) excluding the testimony of defense witness Brad Cameron, and b) giving an incorrect self-defense instruction.

Although the sufficiency of the evidence is not questioned on appeal, a brief factual recitation is necessary in order to discuss the dispositive issues.

On February 18, 1981, at about 9 a.m., Bashe, an unemployed alcoholic, became acquainted with Homer Bloese at a restaurant in Tulsa, Oklahoma. The two spent the day drinking beer and vodka at various locations in Oklahoma. Bloese invited Bashe to accompany him on a trip to Kentucky. En route, they rented a motel room in Joplin, Missouri.

Sometime during that night, or in the early hours of the next morning, Bloese was killed by Bashe. Bloese's skull was crushed and he had been stabbed in the chest four times, two of the stab wounds piercing his heart. Bashe then took Bloese's billfold which contained approximately $1,200, and left the scene in Bloese's car. Bashe attempted to burn the automobile after it became stuck in a ditch and returned to Tulsa, via bus, where he was arrested. Identification of Bashe as a suspect was established by documents found in the burning car.

Bashe made certain admissions to Joplin police officers after his arrest. He admitted striking Bloese with an object, later identified as a rock, after an argument over proposed homosexual activity between the two men. Bashe's recollection of the details of the encounter, as related to the police and testified to by him at trial, was hazy and fragmented.

An analysis of the victim's blood alcohol content after his death showed a concentration of .26 percent weight per volume of alcohol, which gave credence to Bashe's theory of his being so drunk at the time of the killing that he could not form the prerequisite intent required for a capital or second degree murder conviction, assuming the jury believed Bashe's story that the two

men had matched drinks during the day and night before the killing.

At trial, Bashe also contended that he had acted in self-defense, as he feared violence to his person at the hands of Bloese. His evidence on this defense was that he awoke, after previously rejecting homosexual advances, to find Bloese standing over him with an object in his hand. Bashe said he wrestled the object, a rock, away from Bloese, and struck him in the head with it. He had no recollection of the stabbing of Bloese.

## WAS IT PREJUDICIAL ERROR TO EXCLUDE THE TESTIMONY OF DEFENSE WITNESS BRAD CAMERON?

Bashe did not plead not guilty by reason of mental disease or defect, but relied on the defense of not being able to form the requisite intent necessary to sustain a charge of murder due to his being intoxicated. To further that defense, defendant was examined by Dr. Turfboer, a psychiatrist, and by Randee Kaiser, a clinical psychologist. The report of their examinations, which contained the opinion that Bashe's "... likely state of intoxication at the time would have prevented him from formulating the requisite intent to commit capital murder", was timely furnished to the state several months prior to trial. Seven days before trial, defense counsel discovered that Dr. Turfboer would be unavailable as a witness, since he would not be in the state of Missouri on the trial date. In an attempt to counter the loss of Dr. Turfboer's testimony, defense counsel contacted Brad Cameron, the Director of the Alcohol Treatment Program of the Ozark Mental Health Center in Joplin, and arranged to have him examine Bashe.

On August 13, 1981, the trial judge signed an order directing the sheriff of Jasper County to transport Bashe, at 11 a.m. on that day, to the Center for an interview with Cameron. Defense counsel, on that same day, gave formal notice to the prosecuting attorney of his intent to call Cameron. Previously, defense counsel had informally advised the state of his intention to call Cameron as a witness. Defense counsel did not receive Cameron's report until August 16, the day before the trial commenced, and gave the prosecuting attorney a copy of the report on the same day. On August 18, after an objection by the prosecuting attorney, the trial judge indicated that he was going to exclude the testimony of Cameron. Defense counsel then made an offer of proof by Cameron.

Cameron testified that he had a master's degree in social work; that since 1969 he had worked in the psychiatric social field, with the last five years being in the alcohol treatment field. He stated that from his examination of Bashe he concluded that the defendant was a "middle stage" alcoholic, that such a stage is characterized by memory blackouts, daily drinking, loss of jobs and family, and arrests due to drinking. He testified that all of those symptoms were present in Bashe's case. He then gave the following answers to a series of questions:

"Q. Brad, I want to ask you what is called a hypothetical question and I want you to assume an individual with a case history of alcoholism similar to that of Mr. Bashe, and to assume that this person was involved in a homicide in which the decedent was stabbed four times and hit in the head with a rock, and that this individual has no recollection of the stabbing except with respect to reaching in his pocket for a knife, and that immediately before the homicide this individual was awakened from a sleep or stupor or slumber, by a man standing over him with a rock. In your opinion, would a person of this nature be able to recognize that he was in some danger?

A. I think probably he perceived some kind of threat; yes.

Q. And how would you expect that person to react?

A. I would expect the individual to react in a rather explosive, perhaps overreacting manner to protect him or herself.

Q. Before reacting would you suspect that this person would take time, or be

able to consider what harm his reaction might cause to the person with the rock?

Q. Would you suspect this person would be able to think about the consequences of his act, before reacting?

A. No.

Q. And how would the reaction of this intoxicated person be different from the reaction of a normal person?

A. I would think that the intoxicated person would continue to use or would use excessive force, whereas a person non-intoxicated may have stopped after once getting the threatening person away from him, or would use only the force needed to protect him or herself."

The offer of proof was refused on the ground "... that it was not timely disclosure. It did not give the State fair and adequate time to compile evidence to counter this."

Defendant contends that the trial court abused its discretion by excluding the testimony of Cameron on the basis that the defense had not timely complied with the state's request for disclosure, when such was not the case, and that the exclusion of the testimony deprived him of his constitutional right to call witnesses in his own behalf.

■ In a criminal case, the defendant's fundamental right to due process of law includes the right to present witnesses in his defense. *State v. Norris,* 577 S.W.2d 941, 948 (Mo.App.1979). Supreme Court Rule 25.05 requires a defendant, on request, which was made here, to disclose all reports or statements of expert witnesses, subject to certain limitations, and to disclose the names and addresses of proposed witnesses, their written statements, and a summary of their oral statements. Rule 25.16 provides that if a party fails to comply with a discovery rule, the court may, among other remedies, exclude the evidence in question. The rules provide that answers to requests for disclosure shall be made within 10 days after service of the request, and that there is a continuing duty to disclose up to, and during trial. Rules 25.02 and 25.08.

The state was aware, for over three months prior to trial, that one of Bashe's possible defenses was that because of his alcohol addiction and intoxication at the time of the death of Bloese he did not possess the prerequisite intent required to justify a capital or second degree murder conviction. Such information was furnished through the report of Dr. Turfboer and Mr. Kaiser, but the state took no steps to depose the two expert witnesses, or to secure expert testimony contra to the opinions expressed by Turfboer and Kaiser. The state also knew at least a week before trial that Cameron would be a defense witness, and knew who Cameron was. It received Cameron's report two days before he would have testified, but took no steps to depose Cameron, talk to him, or engage an expert to counter his testimony. The state made no showing of how it would be prejudiced by the trial court allowing Cameron to testify, as Cameron's testimony paralleled that which would have been given by Dr. Turfboer, had he been available to testify. Cameron's testimony could have added to the weight the jury gave to the defense testimony that at the time of the killing, Bashe suffered from diminished mental capacity.

From these facts, we do not believe there was any lack of timely disclosure, and that the trial judge erred in so ruling. The only remaining question is, was the error prejudicial? Bashe argues that the trial court's exclusion of this witness resulted in a denial of his federal and state constitutional rights. The Sixth Amendment to the United States Constitution guarantees a defendant in a criminal case compulsory process for obtaining witnesses in his favor. A similar expression is found in Art. I, § 18(a) of the Missouri Constitution. The federal provision is binding on the states as a matter of due process. *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *State v. Oliver,* 572 S.W.2d 440, 445 (Mo. banc 1978). Disallowing relevant and material testimony of a defense witness essentially deprives a defendant of his right to call witnesses in his behalf. Such a

practice is "a drastic remedy that should be used with the utmost of caution." *State v. Mansfield,* 637 S.W.2d 699, 703 (Mo. banc 1982).

The question presented involves a difficult and controversial area of law. Various commentators, and a few courts, have concluded that the federal exclusion sanction [Fed.R.Cr.P. 16(d)(2)], which is quite similar to the Missouri provision [Rule 25.16, V.A.M.R.], has significant constitutional problems when applied to a defense witness. *United States v. Davis,* 639 F.2d 239, 243 (5th Cir.1981); *United States v. Watson,* 669 F.2d 1374, 1383 (11th Cir.1982); Weinstein, *Some Difficulties in Devising Rules for Determining Truth in Judicial Trials,* 66 Colum.L.Rev. 223, 237 (1966). Others have noted similar problems in related subject matter questions not arising from the federal rules. See *State v. Marchellino,* 304 N.W.2d 252 (Iowa 1981); 2 ABA Standards for Criminal Justice, Standard 11–4.7(a) (2d ed. 1980). The court of appeals for the eighth circuit recently declined the opportunity to rule on the constitutionality of the exclusion standard of Missouri Rule 25.16, holding that the petitioner in a habeas corpus case had effectively abandoned such a constitutional claim. *Thomas v. Wyrick,* 687 F.2d 235 (8th Cir. 1982).

■ Missouri courts have considered the application of the exclusion sanction in criminal cases without mention of constitutional implications. *State v. Mansfield,* supra; *State v. Brydon,* 626 S.W.2d 443 (Mo. App.1981); *State v. Harry,* 623 S.W.2d 577 (Mo.App.1981). These cases do make it clear that exclusion of testimony as a sanction is to be tested by whether such trial court action results in fundamental unfairness to the defendant. In attempting to come to grips with the somewhat nebulous term, "fundamental unfairness," we keep in mind that in criminal cases involving erroneous exclusion of defense evidence, such error is presumptively prejudicial, and that presumption can only be overcome by a showing that such erroneous exclusion was harmless error beyond any reasonable doubt. *Burton v. State,* 641 S.W.2d 95, 99–100 (Mo. banc 1982). *Burton* holds that such a showing can only be determined by examining the facts and circumstances of the particular case. These facts and circumstances include the nature of the charge, the evidence presented, and the role the excluded evidence would have played in presenting a defense. *State v. Gormon,* 584 S.W.2d 420, 423 (Mo.App.1979).

■ We have no way of knowing what reaction the jury would have had to Cameron's testimony as we are not clairvoyant. We do know that the charge of capital murder is a serious one, that Bashe was deprived of relevant evidence through no fault of his own, and that the proposed evidence was a vital and integral part of his defense.

The proposed testimony of Cameron was relevant and material, and was timely disclosed to the state. The state has failed to show, beyond a reasonable doubt, that Bashe was not prejudiced by the exclusion of Cameron's testimony. The erroneous exclusion of Cameron's testimony constituted reversible error.

■ Since the case must be retried, we observe that defendant's point relied on concerning the accuracy of the self-defense instruction (MAI–CR2d 2.41.1), even though not properly preserved for review here, appears to be well-taken, in that the given instruction did not include as an integral part sub-paragraph 4 of paragraph No. 4 of 2.41.1, which states:

> "If [name of victim] prior to the encounter assaulted or directed any specific acts of violence against the defendant, you may consider them as explaining the conduct or apprehension of the defendant at the time of the encounter and for the further purpose of determining who was the aggressor."

The inclusion of the paragraph in question is mandated when, as here, there is testimony as to a specific act of violence (Bloese standing over the sleeping Bashe with a rock in his hand). *State v. Peoples,* 621

S.W.2d 324, 327–328 (Mo.App.1981); *State v. Hemphill,* 504 S.W.2d 62, 63 (Mo.1974).

The judgment and sentence of the trial court is reversed and the cause remanded for a new trial.

FLANIGAN, P.J., and TITUS and CROW, JJ., concur.