**STATE of Missouri, Plaintiff-Respondent,**

v.

**Reynold SPULAK, Defendant-Appellant.**

No. 14574.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 24, 1986.

Reynold Spulak, pro se.

John Jacobs, Gainesville, for plaintiff-respondent.

MAUS, Judge.

The defendant was charged with trespass in the first degree. § 569.140, RSMo 1978. A jury found him guilty of the infraction of trespass in the second degree, § 569.150, and recommended a fine of $200. Judgment was entered in accordance with the verdict.

A brief outline of the facts is necessary for consideration of the defendant's decisive point on appeal. George K. Gordon and Jackie Davis Gordon lived on a farm in Ozark County, near Isabella. It could be inferred from the evidence that the farm had been owned by Jackie Davis Gordon's parents and that she had lived on it for many years. The farm was reached by an unsurfaced road that extended from Highway 160, across or along the edge of a farm owned by Mae Herd.

The Gordons conducted a school on their farm. The school was to provide an education concerning civil rights and related subjects. The defendant came to the school on March 10, 1985. He entered by driving the unsurfaced road. Between the date of his arrival and March 15, 1985, he drove the road several times going to and coming from the school.

On March 15, 1985, at Mae Herd's request, unidentified persons brought a back hoe to the scene for the purpose of closing the road. They were accompanied by the sheriff, a deputy sheriff and one or more conservation agents. A hole or a trench was dug on the road adjacent to the Gordon property. An employee of the Gordons saw the activity and told the Gordons. The Gordons, the defendant and others, presumably students, came to the scene of the activity. Those other persons included Thor Davis and Josh Anzelmo.

The state's evidence was to the effect the sheriff told the defendant and others that if they entered the road or the Herd property they would be trespassing and would be arrested. The defendant and Thor Davis were concerned about how they would get their vehicles to the highway. The sheriff denied that he ever said to the defendant "follow me", meaning for the defendant and Thor Davis to follow in their vehicles to the highway. The deputy sheriff made the same denial. As part of the defendant's case, the employee testified that the sheriff did say, "follow me." The defendant testified, "I had overheard him say something to the effect, 'Well, follow me.' And, so, we were directed to go back and get our vehicles and drive them through that gate where we could bypass that digging there by the cattle guard." The defendant and Thor Davis were arrested when they drove their vehicles toward the highway.

It must be noted that Mae Herd testified concerning the reasons she wanted the road closed. Much of her testimony, on direct and on cross-examination, was devoted to whether or not and to what extent the public had used the road. There was vague reference to an unidentified lawsuit concerning the nature and use of the road.

The defendant called as his first witness George K. Gordon. When asked to be sworn Gordon stated that because of his sincerely held religious beliefs, he could not swear. When he was told that he could affirm, he explained that affirmed is a euphemism for swear. Because of his sincerely held religious beliefs he said he could not use the word affirm. Gordon was willing to declare that he would testify subject to the penalty of perjury. However, the court ruled that he would not permit Gordon to testify unless he took the oath or affirmed in the manner prescribed by statute, apparently referring to § 491.-380. It was established on the record that for the same reason four additional prospective witnesses for the defendant, who were in the courtroom to testify on behalf of the defendant, would not be permitted to testify. Those witnesses included Jackie

Davis Gordon, Thor Davis and Josh Anzelmo, who were shown to have been at the scene.

■ By one of his points, the defendant contends the trial court erred in refusing to permit George K. Gordon, Jackie Davis Gordon, Thor Davis, Dirk Dejong and Josh Anzelmo to testify in his behalf. He cites and principally relies upon *Gordon v. Idaho*, 778 F.2d 1397 (9th Cir.1985). The state cites *State v. McClain*, 541 S.W.2d 351 (Mo.App.1976) on the general subject. But, the state says it has found no case in point and "submits the matter to this court for ruling."

Section 492.030 does provide that a person who declares he has conscious scruples against taking an oath or swearing shall be permitted to declare and *affirm* under the pains and penalties of perjury. However, the validity of the defendant's point is established by the case the state cites. In that case the court held the testimony of a child who promised to tell the truth was properly admitted. In so holding the court said:

There is no special litany required in administering an oath. "Whenever the court ... by whom any person is about to be sworn shall be satisfied that such person has any peculiar mode of swearing connected with or in addition to the usual form of administering oaths, which is to him of more solemn and binding obligation, the court ... shall adopt that mode which shall appear to be most binding on the conscience of the person to be sworn." § 492.040. Also, "In all cases in which an oath or affirmation is required or authorized by law, every person swearing, affirming or declaring, in whatever form, shall be deemed to have been lawfully sworn...." § 492.060. "The sanction of an oath, regarded as a feature of judicial procedure, is its quickening of the conscience of the affiant, and the liability it creates to the penalty of perjury, if the testimony is willfully false. This penalty attaches whatever be the form in which the oath is adminis-

tered." *State v. Bennett,* 102 Mo. 356, 373, 14 S.W. 865, 869 (1890).

*State v. McClain,* supra, at 356. The criterion for the sufficiency of an oath has also received the following expression. "[I]t follows that the *form* of the administration of the oath *is immaterial,* provided that it involves, in the mind of the witness, the bringing to bear of this apprehension of punishment." 6 Wigmore, Evidence § 1818 (Chadbourn rev. 1976).

The form of an oath required to make a person a qualified witness has been most often considered in the context of the First Amendment's guarantee of freedom of religion. That context is present in this case. It has been held, "The court abused its discretion in insisting that Gordon use either the word 'swear' or 'affirm' in light of Gordon's sincere religious objections." *Gordon v. Idaho,* supra, at 1400. The Gordon in that case is the tendered witness George K. Gordon. That decision is supported by cases such as *"Moore v. United States,* 348 U.S. 966, 75 S.Ct. 530, 99 L.Ed. 753 (1955), which reversed, per curiam, a holding that the testimony of a defendant who was a member of the Harshmanite Church was properly refused when he declined to use the word 'solemnly' in affirming to tell the truth." *United States v. Looper,* 419 F.2d 1405, 1406 (4th Cir.1969). Also see *United States v. Yoshida,* 727 F.2d 822 (9th Cir.1983). The trial court erred in refusing to permit the tendered witnesses to testify.

█ The state has not raised the issue of the effect of the defendant's failure to make a formal offer of proof. However, lest this opinion be misconstrued, that failure must be considered.

As a general rule, a defendant must make an offer of proof to establish reversible error by the exclusion of proffered testimony. *State v. Heinz,* 607 S.W.2d 873 (Mo.App.1980); *State v. Sullivan,* 553 S.W.2d 510 (Mo.App.1977). This requirement has also been observed in respect to reviewing the action of a trial court in rejecting a tendered defense witness because that witness violated the rule excluding witnesses from the courtroom. *State v. Jones,* 354 So.2d 530 (La.1978). The same has been true when a tendered defense witness has been excluded as a sanction for alleged nondisclosure. *State v. Thomas,* 579 S.W.2d 145 (Mo.App.1979). Also see *State v. Mansfield,* 637 S.W.2d 699 (Mo. banc 1982); *State v. Bashe,* 657 S.W.2d 321 (Mo.App.1983). Some doubt has been expressed concerning the applicability of that requirement in all circumstances. *Braswell v. Wainwright,* 463 F.2d 1148 (5th Cir.1972); *United States v. Seeger,* 180 F.Supp. 467 (S.D.N.Y.1960). It has been said that compulsory process is available to a defendant who establishes "some colorable need for the person to be summoned, . . . ." *Hoskins v. Wainwright,* 440 F.2d 69, 71 (5th Cir.1971).

It is not necessary to further consider whether or not that general requirement is applicable to this case. It may be assumed that it is. However, that requirement must be applied with due regard to the character of the right denied the defendant.

The sixth amendment to the Constitution guarantees to a criminal defendant the right of compulsory process to call witnesses in his favor. This right is applicable to the states under the fourteenth amendment and is implicated when a defendant is barred from calling witnesses to testify on his behalf. *Washington v. Texas,* 388 U.S. 14, 19, 22, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *Singleton v. Lefkowitz,* 583 F.2d 618, 623 (2nd Cir.1978), cert. denied, 440 U.S. 929, 99 S.Ct. 1266, 59 L.Ed.2d 486; *United States v. Melchor Moreno,* 536 F.2d 1042, 1046 (5th Cir.1976). While a defendant's right to call witnesses on his behalf is not absolute, a state's interest in restricting who may be called will be scrutinized closely. See *Washington v. Texas,* supra, 388 U.S. at 18–19, 87 S.Ct. 1920; see also *Williams v. Florida,* 399 U.S. 78, 83 n. 14, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). In this regard, maximum "truth gathering," rather than arbitrary limitation, is the favored goal.

*Ronson v. Commissioner of Cor. of State of N.Y.*, 604 F.2d 176, 178 (2nd Cir.1979) (footnote omitted). Also see *State v. Brown*, 549 S.W.2d 336 (Mo. banc 1977); *State v. Blakeley*, 438 S.W.2d 262 (Mo. 1969).

"An offer of proof serves dual purposes: (1) to inform the court and opposing counsel of the substance of the excluded evidence, enabling them to take appropriate action; and (2) to provide an appellate court with a record allowing it to determine whether the exclusion was erroneous and whether appellant was prejudiced by the exclusion." *Thomas v. Wyrick*, 687 F.2d 235, 239 (8th Cir.1982), cert. denied, 459 U.S. 1175, 108 S.Ct. 824, 74 L.Ed.2d 1020 (1983). However, it is established that an offer of proof is not required when the same would be futile and serve no purpose. *Bender v. Burlington Northern R. Co.*, 654 S.W.2d 194 (Mo.App.1983); *Miller v. KAMO Electric Cooperative, Inc.*, 351 S.W.2d 38 (Mo.App.1961). It is obvious that in regard to the first purpose, an offer of proof by the defendant would have been a useless gesture.

The second purpose may be fulfilled by an examination of the record. That record discloses the following. An issue had been drawn concerning the right to use the road in going to and coming from the Gordons. It is apparent the Gordons would have testified to establish that right. An issue had also been drawn concerning whether or not the defendant and Thor Davis drove their vehicles forward in response to a summons of "follow me." Four of the tendered witnesses were shown to have been eyewitnesses to the incident. It is significant the state does not contend the defendant was not prejudiced by the rejection.

In a case in which the offer of proof disclosed the proffered testimony was of doubtful probative value, the Supreme Court said: "Nevertheless, we remain disturbed that two eyewitnesses, at least to some part of the alleged assault and fight, were in the courtroom and not allowed to testify." *State v. Blakeley*, supra, at 264. It concluded, "Again, we have no way of knowing from the record presented if the additional testimony available and tendered might have changed the outcome of this trial. Whether or not it does is unimportant in comparison to the duty of all courts to protect the basic right of an accused to present his defense." Id. at 265. In a similar vein, it is appropriate to consider the test for reversal employed when there has been an offer of proof.

These cases do make it clear that exclusion of testimony as a sanction is to be tested by whether such trial court action results in fundamental unfairness to the defendant. In attempting to come to grips with the somewhat nebulous term, "fundamental unfairness," we keep in mind that in criminal cases involving erroneous exclusion of defense evidence, such error is presumptively prejudicial, and that presumption can only be overcome by a showing that such erroneous exclusion was harmless error beyond any reasonable doubt.

*State v. Bashe*, supra, at 325.

The record is sufficient to demonstrate the erroneous action of the trial court was prejudicial to the defendant. In similar circumstances it has been declared, "The failure to make a formal proffer cannot be used to deprive Braswell of his sixth amendment right." *Braswell v. Wainwright*, supra, at 1155. The record further shows the remaining points stated by the defendant need not now be considered. The judgment is reversed and the cause is remanded for further proceedings.

PREWITT, P.J., and HOGAN and FLANIGAN, JJ., concur.