**STATE of Missouri, Respondent,**

v.

**William T. WARD, Appellant.**

**No. SC 88409.**

Supreme Court of Missouri,
En Banc.

Jan. 15, 2008.

Bernard Edelman, Steven C. Edelman, Clayton, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Victor J. Melenbrink, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

PER CURIAM.[1]

## Overview

A police officer stopped the vehicle William T. Ward was driving.[2] A dog "alerted" on the vehicle, and nearly 74 pounds of marijuana was found. At trial, Ward refused to take an oath to tell the truth or otherwise pledge to tell the truth, so the trial court refused to permit him to testify. An officer also testified during the trial about Ward's arrest on drug charges in another state.

The jury found Ward guilty of possession of a controlled substance with the intent to deliver in violation of section 195.211.[3] The trial court sentenced Ward to six years' imprisonment. The judgment is affirmed.

## Facts

A St. Louis County police officer stopped Ward's vehicle for expired license plate tags. The officer asked Ward for his driver's license and noticed Ward's hands were shaking excessively as he complied. The officer smelled a "very strong odor of raw marijuana emitting from the vehicle" and called a canine unit. The dog "alerted" to the presence of drugs. The officer found a duffle bag in a luggage carrier on the top of the vehicle that contained nearly 74 pounds of marijuana. Ward was charged with the class B felony of possession of a controlled substance with the intent to deliver.

A competency examination was ordered for Ward. At the competency hearing, Ward stated that he would not take an oath but would tell the truth. The trial court allowed Ward to testify. After Ward's testimony and argument by the prosecutor and counsel assisting Ward, the trial court found Ward competent to stand trial and to represent himself at trial.

Ward represented himself at trial with standby counsel. The State presented the testimony of the officer, the canine detective, the forensic scientist who tested the contents of the duffle bag, and a passenger in the vehicle. The passenger testified that he and Ward had driven to Arizona to buy marijuana from one of Ward's contacts. He also testified that they had pooled their money to buy the marijuana with the passenger supplying the bulk of the money.

---

1. The Court of Appeals, Eastern District, transferred this case to this Court after an opinion by the Honorable Robert G. Dowd, Jr. Portions of that opinion are used without further attribution. This Court has jurisdiction. *Mo. Const. article V, section 10.*

2. A passenger's wife owned the vehicle.

3. All statutory citations are to RSMo 2000.

Ward called a detective as a witness, who testified that the quantity of marijuana did not meet the criteria for federal prosecution. Ward then asked to testify on his own behalf. The following exchange took place:

THE DEFENDANT: I guess that leaves me.

THE COURT: Please face the clerk of the Court. Raise your right hand.

THE DEFENDANT: We already went through that with the—we already went through that, I stated that I haven't taken an oath to affirm to or swear to, but I'll tell the truth.

THE COURT: Okay. Ladies and gentleman of the jury, we're going to take about a five-minute break. I'll give you this instruction before you leave.

The jury was duly admonished and the trial court took a recess. The following exchange took place outside the jury's hearing:

THE COURT: May the record reflect that we're outside the hearing and presence of the jury with the defendant present and Counsel, and with Mr. Smallwood for the State. Mr. Ward and the defendant [sic], I don't know of any law that says your client can promise to tell the truth without being sworn in by the clerk of the Court. Do you know of any law about that, Mr. Edelman [standby counsel]?

MR. EDELMAN: Judge, I don't know of any law about that. Again, we went through this at the competency hearing, just as a reminder, that Mr. Ward—and again, I'm not sure he, like any other witness, has to be subject to the penalty of perjury upon his testimony. And in order to be subject to his testimony of penalty of perjury, he has to swear to take an oath, and I'm not a hundred percent sure what his basis is of why he won't take an oath. I know he doesn't

want to take it under God, so help me God, but I think there is a way to do it without using the word God.

THE DEFENDANT: It's unacceptable to me for any reason.

MR. EDELMAN: You may not be allowed to testify. Be careful.

THE DEFENDANT: As long as it's told to the jury why I can't testify.

MR. EDELMAN: That's up to you. This is your case and you wanted them to hear from you so you better put yourself in a position where you let that happen.

A discussion was held off the record. The following exchange took place on the record.

THE COURT: Let's go back on the record. Mr. Smallwood, do you have any objection to the defendant not being sworn before he's testifying before this jury?

MR. SMALLWOOD: Yes, your Honor. The State objects. I know of no situation where a witness can testify without taking the oath or some type of oath.

THE COURT: Okay. Mr. Ward, what you're saying is that you do not want to take the oath so help you God or affirm under the pains and penalty of perjury before testifying; is that what you're saying?

THE DEFENDANT: I'm saying I'm a nonbeliever. I don't believe in oaths, affirming to oath or anything else.

THE COURT: Do you have scruples? I think you have a conscience, a scruple against taking an oath or swearing in any form; is that correct?

THE DEFENDANT: That's correct.

THE COURT: Can you at least affirm to this statement under Section 492.030: You do solemnly declare and affirm, under the pains and penalty of perjury,

that you will promise to tell the truth in this case?

THE DEFENDANT: No, that means the same thing to me.

THE COURT: Is there any form that you can at least affirm or make some kind of indication—

THE DEFENDANT: No, your Honor.

THE COURT: So there is no oath or no swearing of any form that you will permit before you testify; is that correct?

THE DEFENDANT: That's correct.

THE COURT: You're not permitted to testify in this case, Mr. Ward, unless you do take some kind of oath or affirmance; do you understand that?

THE DEFENDANT: Am I entitled to a closing statement?

THE COURT: Yes, sir. Let's go off the record for a second.

A discussion was held off the record. The following dialogue took place back on the record.

THE COURT: Back on the record. Did you consult with your attorney about your right to testify and right not to testify? You knew that you would have a right not to testify, right, Mr. Ward.

THE DEFENDANT: No, I didn't know I had a right not to testify.

THE COURT: That's okay.

THE DEFENDANT: I thought I had a right to testify.

THE COURT: You have a right to testify if you choose to do so.

THE DEFENDANT: I don't remember it's written anywhere in the bill of rights, in the first ten bill of rights.

THE COURT: That's all right, Mr. Ward. It's already on the record that you understand your right to not testify. You do have a right to testify, but in this court of law you're going to give some kind of statement prior to going on the witness stand which you refuse to do so. And that's okay with me, but you understand I'm not going to permit you to testify in this case if you do not take some kind of oath or affirmance?

THE DEFENDANT: Am I allowed to mention that you allowed this in an earlier proceeding when we had the competency hearing, that you allowed for me to take the stand without taking an oath or affirming?

THE COURT: Your statements weren't used for your credibility or to determine whether or not you were guilty or not guilty. They were used, in fact, to see what you were saying, in other words, whether or not you had clear thinking, knew exactly what was going on and had some competency about representing yourself, that's why we proceeded in that form. But in front of this jury, you will not be permitted to tell them you testified in an earlier proceeding.

THE DEFENDANT: That's what I wanted to ask you, your Honor. I didn't want to get in the middle of it and you jump all over me.

THE COURT: Anything else? Are you ready to argue the case? Do you have any other evidence other than the detective?

THE DEFENDANT: No. No, you said that I can't testify.

Ward rested. Ward did not make an offer of proof regarding his proposed testimony. The trial court asked Ward if he wanted to submit an instruction on his right not to testify, and he stated he did not want to submit the instruction because he believed he was being denied his right to testify. Ward made a closing statement in which he told the jury that he was being denied his right to testify in his own defense.

After deliberation, the jury found Ward guilty of possession of a controlled substance with the intent to deliver. Prior to the sentencing phase, Edelman indicated to the trial court that he would represent Ward. Edelman indicated Ward wanted to testify at the sentencing hearing. Because Ward again stated that he would not take an oath or affirm, the trial court sustained the State's objection to Ward testifying without taking "any oaths or affirmances or any swearing to tell the truth subject to the pains and penalties of perjury." The trial court asked Ward, "[a]nd you could not do any oaths or affirmances or anything that we have already talked about like promises to speak the truth, you could not do that at all?" Ward stated he could not, and he was not allowed to testify at the sentencing hearing.

No evidence was presented at the sentencing phase. After deliberations, the jury recommended a sentence of six years' imprisonment. The trial court subsequently sentenced Ward to six years' imprisonment.

### The trial court properly prevented Ward's testimony

There are several statutory provisions dealing with oaths or affirmances prior to giving testimony. Section 491.380.2 provides:

Every person offered as a witness, before any testimony shall be given by him, shall be duly sworn, or affirmed, that the evidence he shall give relating to the matter in issue between . . . . . . . ., plaintiff, and . . . . . . . ., defendant, shall be the truth, the whole truth, and nothing but the truth.

Section 492.030 provides a specific alternative to the traditional oath and states:

Every person who shall declare that he has conscientious scruples against taking an oath or swearing in any form

shall be permitted to make his solemn declaration or affirmation in the following form: "You do solemnly declare and affirm," etc., concluding with the words "under the pains and penalties of perjury."

In addition, section 492.040 provides:

Whenever the court or officer by whom any person is about to be sworn shall be satisfied that such person has any peculiar mode of swearing connected with or in addition to the usual form of administering oaths, which is to him of more solemn and binding obligation, the court or officer shall adopt that mode which shall appear to be most binding on the conscience of the person to be sworn.

Finally, section 492.060 provides:

In all cases in which an oath or affirmation is required or authorized by law, every person swearing, affirming or declaring, in whatever form, shall be deemed to have been lawfully sworn, and to be guilty of perjury for corruptly and falsely swearing, affirming or declaring, in the same manner as if he had sworn by laying his hands on the gospels and kissing them.

No special litany is required in administering an oath. *State v. McClain*, 541 S.W.2d 351, 356 (Mo.App.1976). The important feature, regardless of the form of oath, is its quickening of the conscience of the witness and the liability it creates for the penalty of perjury. *Id.* Here, the trial court made many attempts to find an acceptable form of oath that Ward would take in order to allow Ward to testify. After making several attempts to fashion an acceptable form of oath, the trial court asked Ward "[s]o there is no oath or no swearing of any form that you will permit before you testify; is that correct?" Ward's response confirmed that there was no acceptable form of oath or swearing.

Ward relies heavily on *State v. Spulak*, 720 S.W.2d 396 (Mo.App.1986), and *State v. Bowlin*, 850 S.W.2d 116 (Mo.App.1993), to support his position. These cases are distinguishable. In both *Spulak* and *Bowlin*, the witness told the court they would not take an oath or affirm, but that they would state that their testimony was subject to the pains and penalties of perjury. *Spulak*, 720 S.W.2d at 397; *Bowlin*, 850 S.W.2d at 117.

Here, although Ward stated he would tell the truth, the statement that he would tell the truth was insufficient to show a quickening of Ward's conscience. He would not state that his testimony was subject to the pains and penalties of perjury as required by section 492.030. The trial court asked Ward if he could "at least affirm to this statement under Section 492.030: You do solemnly declare and affirm, under the pains and penalty of perjury, that you will promise to tell the truth in this case," and Ward replied that he could not. The trial court then asked if there was any form of an oath or affirmance that he would take, and Ward replied there was none. Under the facts of this case, the trial court did not err in denying Ward's request to testify.

### A mistrial was not required for testimony of an arrest in another state

■ Ward also argues the trial court erred in failing to declare a mistrial when the officer testified that Ward had been arrested for drug violations in North Carolina. During his testimony, the State asked the officer if he said "anything to the Ward about smelling raw marijuana from the car." The officer responded:

I asked him if he had ever been arrested for narcotics violations and he said yes, he had been arrested. So, therefore, I had done what was called an

EPIC check. It's a check geared towards people involved in transporting large sums of currency or narcotics. And that proved to be positive. Mr. Ward did come back positive through EPIC for being arrested for possession of cocaine through an airport in North Carolina.

Ward objected to the testimony, and the trial court sustained the objection. Ward requested a mistrial, which was denied by the trial court. On cross-examination by Ward, the officer testified that he "asked if you had ever been arrested for narcotics, you said yes. I did an EPIC check on you. It came back positive. You had been arrested for possession of cocaine through an airport in North Carolina." Ward again objected to the testimony, and the trial court instructed the jury to disregard the evidence, stating it had "no relevance." Ward asked for a mistrial. The trial court again denied Ward's request for a mistrial.

■ A mistrial is a drastic remedy to be exercised only in those extraordinary circumstances in which the prejudice to the defendant cannot otherwise be removed. *State v. Goff*, 129 S.W.3d 857, 866 (Mo. banc 2004). This decision is left to the discretion of the trial court, as it is in the best position to determine whether the incident had a prejudicial effect on the jury. *Id.* Appellate review of a trial court's refusal to grant a mistrial is for an abuse of discretion. *Id.* A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before it and when the ruling is so arbitrary and unreasonable as to shock the appellate court's sense of justice and indicate a lack of careful consideration. *State ex rel. Kemper v. Vincent*, 191 S.W.3d 45, 49 (Mo. banc 2006).

■ In analyzing the prejudicial effect of uninvited reference to other crimes evidence, Missouri courts generally examine five factors: 1) whether the statement was,

in fact, voluntary and unresponsive to the prosecutor's questioning or caused by the prosecutor; 2) whether the statement was singular and isolated, and whether it was emphasized or magnified by the prosecution; 3) whether the remarks were vague and indefinite, or whether they made specific reference to crimes committed by the accused; 4) whether the court promptly sustained defense counsel's objection to the statement and instructed the jury to disregard the volunteered statement; and 5) whether, in view of the other evidence presented and the strength of the State's case, it appeared that the comment played a decisive role in the determination of guilt. *State v. Goff*, 129 S.W.3d 857, 866, n. 7 (Mo. banc 2004).

Applying these factors here, there is no abuse of discretion. The statement made in direct questioning was voluntary and there was no indication that the prosecutor attempted to elicit the testimony. The statement made during cross-examination was also voluntary. Although there were two incidents where the officer testified about the drug violation in North Carolina, the evidence was not emphasized. The statements were brief and isolated. Moreover, the trial court promptly sustained the objections and instructed the jury to disregard the evidence after the statement. Finally, in view of the ample evidence of Ward's guilt, the statement did not appear to play a decisive role in the determination of guilt.

The trial court did not err in refusing to declare a mistrial.

### Conclusion

The judgment is affirmed.

*All concur.*