

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION FIVE</u>

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED107222 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | |
| NATHAN JEROME ALLEN, | ) | Honorable Bryan L. Hettenbach |
| | ) | |
| Defendant/Appellant. | ) | Filed: March 24, 2020 |

<u>Introduction</u>

Nathan Jerome Allen (Appellant) appeals from the judgment of the trial court entered after a jury found him guilty of first-degree murder and armed criminal action. Finding no reversible error, we affirm.

<u>Facts and Background</u>

In the light most favorable to the jury's verdict, the evidence at trial showed the following:

On September 23, 2015, during the day, August Lombardo (Lombardo) and Kelly Massey (Massey) were in front of their house on Dunnica Avenue in St. Louis. Lombardo and Massey witnessed Appellant chasing a man, identified later as Leon Clark (Victim), down the street. Appellant shot at Victim as they ran. Victim fell to the ground and rolled over as Appellant approached him. Appellant fired more shots at Victim

before fleeing in the direction of Keokuk Street.  Victim died of the gunshot wounds at the scene.

Officers arrived a short while later and began to canvass the area in search of witnesses. Police knocked on the door of Lombardo and Massey's residence, but they did not answer or speak with police that day.  A number of other witnesses were interviewed, but none claimed to know the identity of the shooter or Victim.  One witness, Debra Glenn, told police she saw the shooter flee in the direction of Keokuk Street.  A police K-9 unit responded to the scene.  The dog's handler led him around the scene, hoping to track the suspect.  The dog followed a scent in the direction of Keokuk Street, losing the scent a few houses short of Appellant's residence.  At this time, investigators did not identify Appellant as a suspect.

Several months later, Lombardo was arrested on unrelated charges.  In the course of questioning, he offered information to police about the shooting.  Lombardo told police he and Massey had witnessed Appellant shoot Victim and then flee towards his residence on Keokuk Street.  Lombardo was able to identify Appellant as the shooter because they were acquainted with one another: Appellant had sold drugs to Lombardo in the past, and acquaintances of Appellant had lived with Lombardo on Dunnica Avenue for a while.  Massey was also taken into custody and questioned about the shooting; she also identified Appellant as the shooter.

At trial, Lombardo and Massey testified for the State of Missouri (State), as did Detective Michael Herzberg (Det. Herzberg), the homicide detective who led the investigation into Victim's shooting.  The State also presented the testimony of Detective Eric Arnold (Det. Arnold).  Det. Arnold testified about his involvement investigating

2

another shooting, of which Appellant was the victim. Det. Arnold testified during that investigation, after Appellant was shot, he identified Leondre Clark (Leondre)[1], the brother of Victim, as the shooter. However, Appellant refused to cooperate in prosecuting Leondre for the shooting. The State asserted Appellant's motive for killing Victim was that he had been shot by Victim's brother Leondre, and Appellant had opted to take revenge by killing Victim instead of cooperating with the State to prosecute Leondre.

Appellant testified on his own behalf. Aside from denying shooting Victim, Appellant claimed Lombardo had a motive to fabricate his testimony, not only to receive favorable treatment from the State, but because he and Lombardo had run afoul in the past. Appellant claimed he had sold Lombardo fake crack cocaine. He also testified Lombardo had falsely claimed Appellant had broken into his house, which resulted in a physical altercation between him and Lombardo. With regard to being shot by Victim's brother Leondre, Appellant claimed he never told police Leondre shot him. Appellant further claimed he did not know the Clark brothers and had no reason to shoot Victim. Appellant stated he did not remember where he was the day of the shooting.

After deliberations the jury returned a verdict of guilty on the first-degree murder and armed criminal action charges. The trial court sentenced Appellant as a prior offender to concurrent sentences of life without parole for first-degree murder and thirty years for armed criminal action. This appeal follows.

Additional facts necessary to analyze Appellant's points will appear below.

---

[1] We use this individual's first name only for clarity; no undue familiarity is intended.

3

<u>Points Relied On</u>

Appellant makes eight claims of error on appeal. Point I claims the trial court erred by not allowing certain evidence of other individuals who may have had a motive to kill Victim. Point II claims the trial court erred by not granting a mistrial when a State's witness mentioned Appellant requesting an attorney. Point III claims the trial court erred by not allowing Appellant to cross-examine Lombardo regarding a recorded phone call between him and the prosecutor. Point IV claims the trial court erred in overruling Appellant's objection to Det. Herzberg's testimony regarding the K-9 tracking unit at the crime scene. Point V claims the trial court erred in overruling Appellant's objection to Lombardo's testimony about statements he previously made to investigators. Point VI claims the trial court erred by overruling Appellant's objection to Det. Herzberg's testimony regarding out-of-court statements made by a witness at the crime scene. Point VII claims the trial court erred in overruling Appellant's objection to sympathy and fear evidence elicited by the State from Lombardo. Finally, Point VIII claims the cumulative effect of the aforementioned errors resulted in such prejudice that reversal of the judgment is warranted.

<u>Point I</u>

Appellant claims the trial court erred by excluding evidence that would have shown that the Clark brothers, Victim and Leondre, "had problems with other people in the community as they were involved in multiple shootings." At trial, Appellant made an offer of proof as to the evidence he would have presented to the jury. Specifically, he sought to introduce evidence of another shooting committed by Victim, as well as evidence of an investigation into the killing of Leondre while Appellant was incarcerated.

4

He claims this evidence was admissible because the State opened the door by electing to establish Appellant's motive to commit the murder and introducing evidence Appellant had been shot by Victim's brother Leondre.

*Standard of Review*

"A trial court has broad discretion to admit or exclude evidence during a criminal trial, and error only occurs when there is a clear abuse of this discretion." State v. Wood, 580 S.W.3d 566, 574 (Mo. banc 2019), quoting State v. Hartman, 488 S.W.3d 53, 57 (Mo. banc 2016). "A trial court abuses its discretion only if its decision to admit or exclude evidence is clearly against the logic of the circumstance then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." Id., quoting State v. Blurton, 484 S.W.3d 758, 769 (Mo. banc 2016). "This Court will reverse the trial court's decision only if there is a reasonable probability that the error affected the outcome of the trial or deprived the defendant of a fair trial." Id.

*Discussion*

Appellant claims evidence that others in the community had a motive to take revenge on the Clark brothers is admissible to rebut evidence the State offered to show Appellant's motive.

"Parties generally have wide latitude developing evidence of motive." State v. Shurn, 866 S.W.2d 447, 457 (Mo. banc 1993). "Where the defendant claims innocence, evidence of motive, or absence of motive, is relevant." Id. In order to present evidence of the Clark brothers' conflicts with others in the community, Appellant must establish such evidence is relevant to the State's theory of Appellant's motive.

5

"The test for relevancy is whether an offered fact tends to prove or disprove a fact in issue or corroborates other evidence." Kansas City v. Keene Corp., 855 S.W.2d 360, 367 (Mo. banc 1993). The fact at issue is the State's assertion that Appellant had a motive to kill Victim. Simply put, evidence that others in the community had a motive to kill Victim does not make it less likely Appellant had a motive to kill Victim. If anything, it makes it *more* likely Appellant had a motive to kill Victim, as it might tend to show Victim and Leondre had a penchant for behavior that provoked ill will in others. The State did not assert Appellant was the *only* person with a motive to kill Victim, and so showing others had a motive to kill Victim does not rebut the State's assertion.

Appellant's evidence showed nothing more than others may have had a motive or opportunity to kill Victim.

> When the evidence is merely that another person had opportunity or motive to commit the offense, or the evidence is otherwise disconnected or remote and there is no evidence that the other person committed an act directly connected to the offense, the minimal probative value of the evidence is outweighed by its tendency to confuse or misdirect the jury.

State v. Bowman, 337 S.W.3d 679, 686 (Mo. banc 2011). Without relevance to any factual assertion by the State, or any evidence establishing a direct connection between some other individual and the crime, the potential of evidence showing others' motives to commit the crime is substantially outweighed by its potential to confuse and mislead the jury. Appellant does not show any evidence that would directly connect another individual with Victim's shooting. Thus, the trial court did not err by excluding evidence of others' motives.

In the alternative, Appellant argues such evidence was admissible to demonstrate the police investigators' failure to develop other suspects aside from Appellant, despite

6

there being other individuals who potentially had a motive to kill Victim. Appellant complains not being able to present evidence of specific individuals who may have had a motive to kill Victim deprived him of an opportunity to present his theory to the jury. The record does not support this contention. The trial court granted Appellant ample latitude in cross-examining Det. Herzberg on the alleged deficiencies of his investigation and his focus on Appellant based on the accounts of Lombardo and Massey, to the exclusion of other potential suspects. This renders Appellant's evidence largely cumulative and, accordingly, makes it of low probative value. Given the low probative value of the evidence, weighed against its potential to confuse and mislead the jury, we do not find the trial court abused its discretion by excluding it.

Point I is denied.

### Point II

In his second point, Appellant claims the trial court erred by overruling Appellant's request for a mistrial following Det. Herzberg's reference to Appellant's requesting an attorney.

The following exchange occurred during direct examination of Det. Herzberg:

Prosecutor: And between the time you developed [Appellant] as a suspect and today, have you been given any information as to where [Appellant's] whereabouts on that September 23rd, 2015 date, other than that he was the gunman that shot down [Victim]?

Det. Herzberg: No. He would be able – he asked for an attorney when I placed him under arrest.

After this remark, counsel for Appellant asked to approach the bench and requested a mistrial. The trial court denied this request. The prosecutor returned to questioning the witness, asking:

7

Prosecutor: And, Detective, this is just a simple yes or no. Have you gotten any information from anybody else as to the whereabouts of [Appellant] on that September 23rd, 2015 date, other than they were present as the shooter on Dunnica?

Det. Herzberg: No.

Appellant again requested a mistrial, and was again overruled. Appellant requested no other relief from the trial court.

*Standard of Review*

"A mistrial is a drastic remedy to be exercised only in those extraordinary circumstances in which the prejudice to the defendant cannot otherwise be removed." State v. Ward, 242 S.W.3d 698, 704 (Mo. banc 2008). "This decision is left to the discretion of the trial court, as it is in the best position to determine whether the incident had a prejudicial effect on the jury." Id. We review the trial court's refusal to grant a mistrial for an abuse of discretion. Id. "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before it and when the ruling is so arbitrary and unreasonable as to shock the appellate court's sense of justice and indicate a lack of careful consideration." Id.

*Discussion*

Improper use of an arrested person's invocation of their right to remain silent against them in court is proscribed by the Constitution. Doyle v. Ohio, 426 U.S. 610, 618 (1976). "It is well established that the State may not use a defendant's post-arrest silence, or language representing silence, to incriminate the defendant." State v. Mason, 420 S.W.3d 632, 638 (Mo. App. S.D. 2013). "'Silence' extends to a defendant's request for counsel." Id.

8

As a preliminary matter, we are unconvinced of Appellant's assertion a Doyle violation occurred. Doyle involves the State's *use* of a defendant's post-arrest, post-*Miranda* statement as impeachment material or otherwise substantive evidence of guilt. State v. Dexter, 954 S.W.2d 332, 337 (Mo. banc 1997). On the other hand, "[i]t is not an uncommon occurrence at trial for a witness to unexpectedly volunteer an inadmissible statement." State v. Simrin, 384 S.W.3d 713, 721 (Mo. App. S.D. 2012). We find it important to distinguish whether the State in any way elicited, or thereafter utilized, Det. Herzberg's statement regarding Appellant's post-arrest silence.

Despite Appellant's arguments to the contrary, we find Det. Herzberg's statement was clearly unresponsive to the prosecutor's question, such that it cannot be said the prosecutor was deliberately attempting to elicit it. Nor did the prosecutor highlight or otherwise seek an advantage from the complained-of statement. During direct examination, the prosecutor asked Det. Herzberg whether he had received any information that would have placed Appellant at a location other than the scene of the crime. This question in no way called for or referenced the subject of Appellant's post-arrest silence. Similarly, although Appellant argues the prosecutor "craftily repeated and emphasized" the question after sidebar, in our view he did nothing of the sort. On the contrary, the prosecutor carefully rephrased the question in a way that made it explicit to Det. Herzberg it was not meant to elicit testimony about Appellant's post-arrest silence.

Further, in order to constitute a Doyle violation the complained-of testimony must give rise to some reasonable inference of guilt. State v. Stites, 266 S.W.3d 261, 267 (Mo. App. S.D. 2008). Appellant argues this burden is met because the testimony showed "Appellant was approached by the police, put into handcuffs, was told he was under

9

arrest for the murder of [Victim] and after clearly being asked questions he invoked his right to counsel. Something that only a guilty man would do...." But the mere fact someone is arrested and invokes their right to counsel does not, on its own, give rise to a reasonable inference of guilt. Stites, 266 S.W.3d at 268, citing State v. Anderson, 79 S.W.3d 420, 441 (Mo. banc 2002).

When, as here, a witness at trial spontaneously offers inadmissible testimony, discretion lies with the trial court to measure its potential prejudicial effect on the jury and act accordingly. Simrin, 384 S.W.3d at 721. We find the trial court did not abuse its discretion by refusing Appellant's request for a mistrial. Having not asked the trial court for any other form of relief short of a mistrial, Appellant may not on appeal complain he was prejudiced by not receiving it. See State v. Smith, 934 S.W.2d 318, 321 (Mo. App. W.D. 1996), quoting State v. Tygart, 531 S.W.2d 47, 50 (Mo. App. K.C. 1975) (failure to request relief short of mistrial "dulls any inclination on the part of this court to label the trial court with an abuse of discretion").

Point II is denied.

### Point III

Appellant next claims the trial court erred by not allowing him to introduce a jail phone call that took place between Lombardo and the prosecutor.

In a hearing outside the presence of the jury, Appellant sought the approval of the trial court to offer recordings of various phone calls made by Lombardo while in jail. One such call was between Lombardo and the prosecutor wherein Lombardo asked, "How did it go when I was down there?" allegedly referring to his pretrial deposition, and the prosecutor replied, "You're no Sunday school teacher and it went as best as it could."

10

Lombardo also stated he could "walk Kelly Massey right into [the prosecutor] as well." The defense argued the tapes served to develop a narrative of Lombardo's participation in the trial being motivated by a desire to please the State in order to gain favorable treatment, which was relevant to impeach his credibility. The trial court ruled that, subject to Lombardo's testimony on the stand, some of his recorded statements may be introduced to impeach him. However, the trial court opined the prosecutor's statements may not be introduced to impeach Lombardo.

*Standard of Review*

"To preserve a claim that evidence was improperly excluded, the proponent of the evidence must attempt to present the evidence at trial, and if an objection is sustained, the proponent must then make an offer of proof." State v. Speaks, 298 S.W.3d 70, 85 (Mo. App. E.D. 2009), citing State v. Chambers, 234 S.W.3d 501, 511 (Mo. App. E.D. 2007). "An offer of proof made before trial at a hearing on a motion in limine will not suffice." Id., quoting Chambers, 234 S.W.3d at 501. "To preserve the matter for appellate review, the offer of proof must be made during trial." Id. (quotation marks omitted).

At the pretrial hearing, the trial court indicated its belief the prosecutor's statements could not be used to impeach Lombardo. However, the trial court left open the possibility Lombardo may be impeached with his own recorded statements depending on his testimony at trial. At trial, Appellant never cross-examined Lombardo on his own statements in the phone call or sought to have just those statements admitted after the trial court's initial interlocutory ruling. To the extent Appellant now complains he should have been allowed to do that which he never attempted to do, we find that claim of error is not preserved. Thus, we review Appellant's claim only for plain error.

11

Plain error involves a two-step analysis by this Court. Id. at 86. The first step is to determine whether the claim facially establishes "substantial ground for believing a manifest injustice or miscarriage of justice has occurred." Id. If no such grounds appear, the analysis ends. Id. However, should such grounds be found, the second step is to determine whether a manifest injustice or miscarriage of justice actually occurred. Id.

*Discussion*

Appellant fails to establish a facial claim of a manifest injustice or miscarriage of justice. As to the portions of the phone call containing the prosecutor's statements, the trial court was correct to be wary of their admissibility, as they are not Lombardo's own statements, nor was there an indication of how they might directly contradict his testimony. See State v. Duncan, 397 S.W.3d 541, 544 (Mo. App. E.D. 2013) (error to allow State to impeach witness with statement of another not materially inconsistent with testimony). To the extent the evidence attacked Lombardo's credibility by showing he had an ulterior motive in testifying, the recording was of low probative value and largely cumulative of other evidence presented by Appellant. Appellant was granted ample leeway by the trial court to attack Lombardo's credibility on cross-examination by showing, *inter alia*, he had received or hoped to receive favorable treatment from the State in exchange for his testimony, as well as his alleged personal animosity towards Appellant, and his drug addiction. Given the sufficient opportunity otherwise afforded to Appellant to attack Lombardo's credibility, exclusion of the jail call does not rise to the level of plain error.

Point III is denied.

12

## Point IV

Next, Appellant claims the trial court erred by overruling his objection to testimony by Det. Herzberg regarding investigators' search utilizing a K-9 unit at the scene of the crime.

On direct examination Det. Herzberg testified a witness at the scene observed Appellant run south after the shooting, towards Keokuk Avenue. After this testimony, the following exchange was had:

> Prosecutor: Okay. And what is the – what is the significance of the 3400 block of Keokuk to your investigations?
>
> Det. Herzberg: Two things. The first is that the K-9 tracked – the police K-9 unit and its handler – I think he's retired now, Officer Dobbs, and an Officer Simms from the Third District. The dog led them on a track to 3451 Keokuk. And the – later when we were advised of the identity of the shooter, somebody reported the identity of the shooter, that person lived at 3443 Keokuk.
>
> Prosecutor: Okay. And so the information that you were given is that a K-9 officer –
>
> Defense: Your honor, I'm going to object to lack of personal knowledge and foundation.
>
> Trial Court: Well, that's sustained.
>
> Prosecutor: Judge, he's testified that he's the lead officer and he's – he's directing his investigation based on information so it goes to explain subsequent content – or conduct.
>
> Defense: Your Honor, he didn't conduct this so-called search.
>
> The Court: First of all, you're asking him leading questions. So ask him open-ended questions and walk him through his investigation, and I think you'll be fine.
>
> Prosecutor: Okay. So let's start again. So what did you learn – where did you learn this K-9 led?

13

Det. Herzberg: To – I was advised that the K-9 track went from the scene of the incident to – and ended at 3451 Keokuk when the dog lost the scent.

Defense: Your Honor, I'm going to again object for lack of foundation.

Trial Court: That's overruled.

*Standard of Review and Discussion*

On appeal the State argues Appellant's objection at trial was not timely, and did not preserve the issue for appeal. We agree.

"A trial court's ruling on an objection is preserved for appellate review only if the objection was timely or the party timely moved to strike the answer." Blurton, 484 S.W.3d at 774. "An objection to testimony must be made at the earliest possible opportunity to allow the trial court to invoke remedial remedies." Id. An exception to this rule exists where "the witness answers so quickly that it is impossible to object or if the grounds for the objection become apparent only when the answer is given." Id. Under those circumstances, "the opposing attorney must object to the answer as soon as possible." Id.

Appellant's delayed objection does not fall under this exception. Although the prosecutor's question did not mention or elicit information about the K-9 tracking dog, Det. Herzberg spoke at some length about it without drawing an objection from the defense. Det. Herzberg used the term "dog" or "K-9" three times over the course of answering the prosecutor's question, even digressing to recall the names of the handler and another officer involved in the search. It was not until the prosecutor had finished his next question, which also mentioned the K-9 search, that the defense objected.

Pursuant to Blurton, we find Appellant did not timely object to testimony regarding the K-9 such that he preserved it for appellate review. Regarding further

14

objections made by the defense to testimony about the K-9 search, "admission of testimony over objection is not reversible error if similar questions have previously been asked and answered without objection." Id., citing State v. Taylor, 408 S.W.2d 8, 11 (Mo. 1966).

Point IV is denied.

Point V

Appellant's fifth point claims the trial court erred by overruling the defense's objection to Lombardo's testimony regarding his own out-of-court statement.

As discussed, Appellant's theory of the case hinged on painting Lombardo's testimony as dishonest and self-serving. The State attempted to rebut this characterization in several ways, including demonstrating to the jury Lombardo had received little to no actual favorable treatment in exchange for his testimony, and showing his testimony was corroborated with other evidence, including the testimony and earlier statements of Massey. Particularly, the State attempted to show Lombardo's and Massey's statements corroborated one another and could be relied upon because at the time of their initial interview by police they had been separated, and thus were not able to coordinate a fabricated story. To show this, on direct examination the prosecutor asked Lombardo what he had told investigators about the crime when initially interviewed. The defense objected on the grounds of hearsay, which was overruled. Lombardo then answered, "I told Detective Herzberg what happened, what I just told you here. What happened on Dunnica. What I seen [sic]." The prosecutor then asked if he had coordinated his story with Massey; Lombardo answered, "No."

15

*Standard of Review*

Appellant challenges an evidentiary ruling of the trial court. The standard of review is identical to Point I, *supra*.

*Discussion*

Hearsay is an out-of-court statement used to prove the truth of the matter asserted. State v. Douglas, 131 S.W.3d 818, 823 (Mo. App. W.D. 2004). However, "[n]ot all out-of-court statements are hearsay in that to constitute hearsay the statement must be offered for the truth of the matter asserted." Id. "Thus, an out-of-court statement that is not offered for the truth of the matter asserted is not hearsay and is, therefore, admissible even though it does not fall within a recognized exception." Id.

Here, the prosecutor did not offer Lombardo's out-of-court statement to investigators to establish what it asserted, which was Lombardo's narrative of the crime. Rather, it was offered to rebut Appellant's assertion that Lombardo and Massey had fabricated and coordinated a false story about Appellant shooting Victim because of their personal animosity towards Appellant and to obtain favorable treatment from the State. Because the statement was not offered for the truth it asserted, it was not hearsay, and the trial court did not abuse its discretion by overruling Appellant's objection.

Point V is denied.

Point VI

Next, Appellant claims the trial court erred by overruling his objection to the testimony of Det. Herzberg referencing a statement made by a witness at the scene of the crime who did not testify at trial.

16

After defense's cross-examination of Det. Herzberg, the prosecutor asked him what information corroborated the information he received from Lombardo and Massey. Det. Herzberg answered that the statements of Debra Glenn, a witness interviewed at the scene but not called to testify, corroborated such information. The defense objected on the grounds of hearsay. The trial court overruled this objection.

*Standard of Review*

Appellant challenges an evidentiary ruling of the trial court. The standard of review is identical to Points I and V, *supra*.

*Discussion*

As previously discussed, hearsay is an out-of-court statement used to prove the truth of the matter asserted. Douglas, 131 S.W.3d at 823. However, "[n]ot all out-of-court statements are hearsay in that to constitute hearsay the statement must be offered for the truth of the matter asserted." Id. "Thus, an out-of-court statement that is not offered for the truth of the matter asserted is not hearsay and is, therefore, admissible even though it does not fall within a recognized exception." Id.

The prosecutor had at minimum two other reasons to offer Debra Glenn's out-of-court statements other than for the truth they asserted. First, on cross-examination Appellant attempted to characterize Det. Herzberg's investigation as deficient because he had focused on Appellant to the exclusion of other viable suspects based solely and unreasonably on the incredible testimony of Lombardo and Massey, doing so out of a desire to close the case at any cost. Debra Glenn's statement corroborated Lombardo's and Massey's testimony, rebutting the defense's theory of the deficiencies of the investigation. Second, Debra Glenn's out-of-court statements provided explanation for

17

the subsequent conduct of Det. Herzberg over the course of his investigation. Out-of-court statements offered to explain subsequent police conduct in the course of an investigation are not hearsay. Id. at 824. Thus, the trial court did not abuse its discretion by overruling Appellant's hearsay objection.

Appellant's Point VI is denied.

Point VII

Point VII claims the trial court erred by overruling the defense's objection to the prosecutor eliciting sympathy and fear evidence from Massey and Lombardo, as it was irrelevant.

On direct examination Massey testified she was fearful of Appellant, and feared reprisal from his family for testifying. Appellant objected for relevance and was overruled. Massey further testified she had been in hiding, and did not come into court to testify willingly.

When Lombardo testified, he similarly stated his reluctance to testify against Appellant in court. The prosecutor also elicited testimony from Lombardo regarding difficulties in his life, including testimony about his mother's recent violent death. Appellant's objections for relevance were overruled.

*Standard of Review*

Appellant challenges an evidentiary ruling of the trial court. The standard of review is identical to Points I, V, and VI, *supra*.

*Discussion*

For evidence to be admissible, it must be relevant. State v. Anderson, 76 S.W.3d 275, 276 (Mo. banc 2002). Relevance is a two-part test: first, the evidence must be

18

logically relevant; second, it must be legally relevant. Id. "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." Id. "Logically relevant evidence is admissible only if legally relevant." Id. "Legal relevance weighs the probative value of the evidence against its costs – unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." Id.

"The credibility of witnesses is always a relevant issue in a lawsuit." Hays v. State, 360 S.W.3d 304, 313 (Mo. App. W.D. 2012). Evidence that the witnesses were fearful to come forward is relevant to their credibility because it tends to show their testimony is not solely motivated by self-interest. Id. This was especially applicable in the instant case because it rebutted the theory advanced by Appellant, that Lombardo and Massey were lying on the stand for personal gain. As to the prosecutor eliciting evidence of Lombardo's life difficulties, this information was relevant to rebut Appellant's attacks on Lombardo's credibility and character based on his drug addiction. The prosecutor sought to rehabilitate his credibility by explaining to the jury his struggle with addiction had roots in past difficulties.

While such evidence is logically relevant, it still must be legally relevant, meaning its probative value must outweigh its potential to confuse or mislead the jury. Appellant argues the legal irrelevance of the evidence is shown by its tendency to invite the jury "to feel bad for Lombardo and Massey and make him appear more credible." But the credibility of the witnesses is precisely what makes the evidence logically relevant. Appellant points to no countervailing prejudicial effect on the jury that makes the evidence inadmissible. While testimony regarding Lombardo's mother's death somewhat strains the limits of logical relevance, "[w]e defer to the trial court's better

19

position to weigh the probative value of the evidence against its prejudicial effect." State v. Taylor, 770 S.W.2d 531, 535 (Mo. App. E.D. 1989). The trial court's ruling has not shocked our sense of justice, nor indicated a lack of careful deliberation.

Point VII is denied.

## Point VIII

In his final point, Appellant claims the cumulative errors of the trial court resulted in prejudice to him, such that the judgment must be reversed.

"An appellate court may grant a new trial based on the cumulative effects of errors, even without a specific finding that any single error would constitute grounds for a new trial." State v. West, 551 S.W.3d 506, 525 (Mo. App. E.D. 2018), quoting Koontz v. Ferber, 870 S.W.2d 885, 894 (Mo. App. W.D. 1993). However, as discussed we find all of Appellant's claims of error on appeal to be without merit. Because Appellant has established no errors by the trial court, cumulative or otherwise, Appellant's Point VIII is denied.

## Conclusion

The judgment of the trial court is affirmed.


_____
SHERRI B. SULLIVAN, J.

Colleen Dolan, C.J., and
James M. Dowd, J., concur.

20