Wafa–A ELMAHDI, Appellant,

v.

James A. ETHRIDGE, Respondent.

No. WD 55428.

Missouri Court of Appeals,
Western District.

Jan. 12, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 2, 1999.

Application to Transfer Denied
April 27, 1999.

Joseph Y. Decuyper, Kansas City, for appellant.

John L. Mullen, Kansas City, for respondent.

Before Chief Judge PATRICIA BRECKENRIDGE, Presiding, Judge, JAMES M. SMART and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, J.

Plaintiff–Appellant Wafa-a Elmahdi ("plaintiff") appeals from a judgment entered on November 21, 1997, on a jury verdict in favor of Defendant–Respondent James A. Ethridge ("defendant") in an action for the wrongful death of her husband, Kamal, as a result of a traffic accident. Plaintiff claims that she is entitled to a new trial because the trial court erred: 1) in permitting the defendant to question her concerning her remarriage after the death of Kamal; 2) in not permitting her to question the defendant regarding his prior admission he may have been driving up to 3 miles over the posted speed limit; and 3) in permitting a state trooper to testify regarding an alleged point of impact of Kamal's car with a guardrail prior to being hit by the defendant. While the court's ruling on the remarriage issue was error, it was not prejudicial as it could have affected only damages, and the jury never reached that issue since it found for defendant on the issue of liability. Because a copy of defendant's deposition testimony was not admitted below or offered as part of an offer of proof, we cannot review the second allegation of error. We find no reversible error in regard to the state trooper's testimony, which largely concerned only his factual observations of the scene, and as to which no objection was made below that it invaded the province of the jury, as claimed on appeal. For these reasons, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Kamal Elnimeri left his job as a kitchen associate at the Marriott Hotel located at the Kansas City Airport on April 20, 1993, a little

before 6:00 a.m. Kamal was proceeding southbound on Interstate 29 towards his home, and was driving his 1983 Chevrolet Cavalier.

At approximately 5:30 a.m. on the same morning, George Shanks left his home north of Platte City, also heading south on I–29. Shanks testified that when he left it was still dark outside and a light rain was falling, so he turned on his headlights and his windshield wipers.

The defendant, James Ethridge, left his home at approximately 5:45 a.m. and began driving to work in his 1985 Ford Crown Victoria. He, too, was traveling southbound on I–29. The defendant testified that he had set his cruise control at 65 miles per hour and that he had his windshield wipers on intermittent and his lights on low beam due to the light mist that was falling.

There are three southbound lanes on I–29 in the area of the accident. A double metal guardrail median separates these three southbound lanes from three northbound lanes. Mr. Shanks was proceeding in the middle of the three southbound lanes. In the vicinity of 291 Highway and I–29, Mr. Shanks noticed the defendant's car traveling about five to seven car lengths behind him in the innermost southbound lane (the one closest to the median). Shanks noticed the defendant's car because it was a Crown Victoria and the front grill work of it looked to him like a police car. He therefore slowed down from approximately 65 miles per hour to 55 to 60 miles per hour.

As Shanks continued south on I–29, he saw Kamal's Cavalier stopped and sitting crosswise in the innermost southbound lane just north of the 112 th Street exit. The car did not have any lights on and there were no flares in the road. There were no street lights in the area and he did not notice anyone outside the car. The front of the car looked dark and Shanks swerved to the right because he feared that part of the stalled car might be sticking into his lane. He looked back and saw the Crown Victoria was still coming about five to seven car lengths behind him in the left lane, the same lane that Kamal's car was stopped in. He continued looking back at it and thought to himself that

there was no way the defendant could avoid hitting the stopped car. He saw the Crown Victoria crash into Kamal's car. He then pulled over and ran back to try to help.

Sergeant Jack McMillen of the Missouri State Highway Patrol was dispatched to the accident at 6:07 a.m. Trooper McMillen has been on the highway patrol for over 30 years and has received training as a regular accident investigator, consisting of a one-week school conducted at the Missouri Highway Patrol Academy in Jefferson City. He had also been trained as an advanced accident scene investigator, consisting of a two-week school conducted at the Missouri Highway Patrol Academy.

Upon his arrival at the scene, Trooper McMillen observed that two vehicles had been involved in the accident: the 1983 Chevrolet Cavalier driven by Kamal, and the 1985 Ford Crown Victoria driven by Mr. Ethridge. The Cavalier was facing the guardrail just north of the 112 th Street exit. The Crown Victoria was parked in the left lane about 30 feet north of the Cavalier. Trooper McMillen testified he observed a pool of water in the left lane, scuff marks coming out of the water toward the guardrail, and damage to the guardrail approximately 200 feet north of where the Crown Victoria came to rest. He inspected the Cavalier and confirmed that Kamal was dead. He testified at trial that he was trained to look at accident debris and determine where it came from. He stated that he found debris at the scene associated with both vehicles and that he found part of the deceased's Cavalier smashed into the guardrail, specifically, part of the front grill and bumper were wrapped around the guardrail post, in the area of the scuff marks, and that he found paint and chip marks from the Cavalier at that location.

Kamal was survived by his wife, Plaintiff Wafa-a Elmahdi, and his three children. Plaintiff filed her Petition for Wrongful Death on February 18, 1994, in Platte County Circuit Court, alleging the defendant was careless and negligent in operating his vehicle and that his negligence directly caused Kamal's death. On October 8, 1997, the jury

returned its verdict finding the defendant 0% at fault and also finding Kamal 0% at fault. It is from this judgment that plaintiff appeals.

## II. EVIDENCE CONCERNING PLAINTIFF'S REMARRIAGE DID NOT AFFECT THE LIABILITY DETERMINATION

In her first point on appeal, plaintiff claims the trial court erred in permitting the defendant to question her regarding her remarriage two years after the death of her husband, Kamal. We agree with plaintiff that, generally, evidence relating to remarriage of the plaintiff in a wrongful death case is to be excluded. *Call v. Heard,* 925 S.W.2d 840, 852 (Mo. banc 1996); *Glick v. Allstate Insurance Company,* 435 S.W.2d 17, 23 (Mo. App.1968). It is never admissible in order to mitigate damages by showing that the plaintiff has a new spouse who may be providing him or her with income or household services. *Johnson v. Pacific Intermountain Express Co.,* 662 S.W.2d 237, 239 (Mo. banc 1983). On the other hand, as defendant notes, our Supreme Court held in *Call* that a defendant may mention the fact of plaintiff's remarriage, although not details about the new spouse's income or services, if necessary in order to correct a misimpression created by the plaintiff. *Call,* 925 S.W.2d at 852.

The parties differ as to how these principles apply here. Plaintiff says that defendant clearly wanted to use the evidence to mitigate damages. Defendant says that plaintiff's testimony left the misimpression that she had no one to provide for her now that her husband was deceased, and that correction of this misimpression was the only reason that evidence of plaintiff's remarriage was introduced below. In fact, in arguing whether defendant could mention the remarriage, defense counsel argued that evidence of remarriage should come in because:

We're talking about the future damages she's claiming. And she's just described the future damages. She said Kamal was her sole income, and the loss of that was devastating to her, and it continues to the present time. First of all, that's not even true. She has the benefit of her husband's income at the present time. And that's why we're entitled to go into that.

Moreover, when the court permitted defense counsel to ask about remarriage, he clearly did attempt to use it to mitigate damages, as follows:

Def. Counsel: What is your present marital status?

Mrs. Elmahdi: I'm married right now.

. . . .

Def. Counsel: When were you remarried?

Mrs. Elmahdi: In 1995

Def. Counsel: to whom?

Mrs. Elmahdi: Soulamon Salan.

Def. Counsel: And you've been married to him since that time?

Mrs. Elmahdi: Right.

. . . .

Def. Counsel: You have the benefit of your husband's income at the present time, correct?

Mrs. Elmahdi: No.

Def. Counsel: He doesn't support you at all?

Mrs. Elmahdi: No.

As is evident, defendant did attempt to use evidence of remarriage to mitigate damages, although the testimony was that, in fact, the new husband did not contribute financially to the marriage, and thus plaintiff did not misrepresent the facts in her testimony about loss of income. In any event, evidence of remarriage was not admissible to show that Mrs. Elmahdi had access to other income now.

While admission of remarriage evidence was thus erroneous, we do not find the error was prejudicial on the particular facts of this case. As the Supreme Court noted in *Johnson,* the reason for exclusion of evidence of remarriage is a concern that it will be used by the jury to unduly mitigate *damages* to which the plaintiff is entitled by law. *Johnson,* 662 S.W.2d at 239. Here, the jury never reached the issue of damages; it found no liability on the part of defendant. Thus, the

error could not have been prejudicial because the jury never reached the issue of damages.[1]

## III. ERROR IN EXCLUSION OF DEFENDANT'S DEPOSITION STATEMENT

■ In her second point, plaintiff asserts that the trial court erred in prohibiting her from questioning the defendant regarding whether he had testified at his deposition that he was going 65 to 68 miles per hour before the collision with Kamal's car, because this testimony constituted an admission of a party-opponent and was admissible on this basis under Rule 57.01(a)(2), which states that a party may use the deposition of an adverse party "for any purpose." This rule has been interpreted to mean that deposition testimony can be used as an admission if it is a voluntary and relevant statement which is unfavorable to the party giving it or is inconsistent with the position now taken by the party:

> When a deposition is offered as an admission by a party-opponent, the deponent's availability is not a factor in determining whether or not the deposition testimony is admissible. Nor must the testimony be a direct admission of the ultimate facts in issue. Rather, the admission may be introduced into evidence if it bears on the issue incidentally or circumstantially. The proponent of the admission of a party-opponent must establish 1) [it is] a conscious or voluntary acknowledgment by a party-opponent of the existence of certain facts; 2) the matter acknowledged [is] relevant to the cause of the party offering the admission; and, 3) the matter acknowledged [is] unfavorable to, or inconsistent with, the position now taken by the party-opponent. The deponent must be a party to the lawsuit at the time the admission is offered.

*Henson v. Board of Educ. Of Washington School Dist.*, 948 S.W.2d 202, 211 (Mo.App. 1997).

Plaintiff claims that defendant's deposition testimony that he was going 65 to 68 miles per hour is admissible under this rule, since it was arguably inconsistent with his testimony at trial that he was traveling, on cruise control, at the posted speed limit of 65 miles per hour. Plaintiff also claims that, in any event, defendant's deposition testimony as to his speed was unfavorable to his position at trial, as it could support a finding that he was traveling at 3 miles over the speed limit at the time of the accident. For both of these reasons, plaintiff argues, defendant's deposition testimony constituted an admission and was admissible on this basis, and was a key element of his case.

■ Defendant counters that plaintiff has failed to preserve this issue. We agree. First, while plaintiff's counsel stated below that he was not offering the testimony for impeachment, he never told the court on what basis he was trying to admit it. He never suggested it was an admission, and never asked for permission to read it into the record as an admission. He did try to question the defendant about it, but even then he did not quote the portion at issue. When defense counsel's objections to this questioning were sustained, plaintiff's counsel never made an offer of proof of the deposition or any part of it, and it is not in the appellate record.

■ Generally, we will not review excluded evidence without a definite and specific offer of proof. *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 883–884 (Mo. banc 1985). In order to preserve any possible error, the offer of proof must provide us with a record from which we can determine whether the exclusion was erroneous and whether it was prejudicial. *State v. Spulak*, 720 S.W.2d 396, 399

---

**1.** While plaintiff argues that "evidence of remarriage in a wrongful death case is so inflammatory and so prejudicial that it may have influenced the nine jurors who reached the verdict in finding no liability," she cites no evidence and no legal authority in support of this position. There is nothing unusual or inflammatory about the widow's remarriage in this case two years after the death of her husband. Thus, in order to accept plaintiff's argument, we would have to hold that the mere fact a widow had remarried is itself so inflammatory as to automatically be prejudicial and require a new trial on liability as well as damages. We reject that argument. The only potential effect of evidence of remarriage was on damages.

(Mo.App.1986). Only in certain narrow circumstances is such an offer unnecessary. *Frank*, 687 S.W.2d at 883–84. Those circumstances exist when: there is a complete understanding, based on the record, of the excluded testimony; the objection is to a category of evidence, rather than to specific testimony; and the record reveals the excluded evidence would have helped the proponent. *Id.*

Without a copy of the deposition testimony, we are unable to review the claim of error here. While we know that counsel for plaintiff believes it constituted an admission by defendant, and was inconsistent with his trial testimony, in the absence of an offer of proof, we do not know exactly what language was used by defendant, in response to what question, nor do we know the fuller context of this testimony.[2] We therefore cannot determine whether the trial court was in error in excluding it.

## IV. POINT OF IMPACT TESTIMONY

 In her third point on appeal, plaintiff argues the trial court erred in permitting Trooper McMillen to testify regarding the alleged point of impact of her deceased husband's Chevrolet Cavalier with the metal highway guardrail median, prior to the collision between her husband's Cavalier and Mr. Ethridge's Crown Victoria. She argues that this constitutes improper expert testimony about point of impact, and, as such, was not admissible.

 It is well-settled in Missouri that it is reversible error to permit an expert to offer an opinion as to the point of impact of two vehicles in a personal injury case. Our Supreme Court stated in *Housman v. Fiddyment*, 421 S.W.2d 284, 289–90 (Mo. banc 1967), that today's jurors are all familiar with cars and are sufficiently qualified to determine the point of impact based on the evidence of witnesses as to the scene of the accident, the location of debris, and so forth.

Expert testimony on this issue is thus unnecessary and inadmissible. *Id.*

We do not find this principle applicable here, however. The first problem with plaintiff's argument is that, at trial, plaintiff's counsel did not object to the trooper's testimony on the basis that it invaded the province of the jury or that it was improper "point of impact" testimony. To the contrary, at the beginning of the trooper's testimony plaintiff's counsel noted that the trooper had admitted that he was not an expert in accident reconstruction. Plaintiff's counsel therefore argued that the trooper was simply not qualified to give an expert opinion as to where impact occurred and how the accident happened.

The trooper did testify as to his training and experience in accident investigation. He said he had been on the highway patrol for over 30 years and had received training as a regular accident investigator, which consists of a one-week school conducted at the Missouri Highway Patrol Academy in Jefferson City. He had also been trained as an advanced accident scene investigator, which consists of a two-week school conducted at the Missouri Highway Patrol Academy. On the basis of these qualifications, the court permitted the trooper to testify as to his factual observations during his investigation of the scene of the accident.

Trooper McMillen then testified, without objection, to a number of observations he made when he arrived at the accident scene, including testimony that north of the accident scene he found water had pooled in ruts in the inner lane of the highway, and that he saw scuff marks coming out of the pooled water and leading to the guardrail. When defense counsel tried asking the trooper about where the scuff marks had come from at the time of the accident, however, plaintiff's counsel objected that the trooper lacked foundation for giving this opinion, and that objection was *sustained.* Defense counsel then asked the witness if he found any gouge marks or similar marks in the area of the

---

2. This is not just a technical objection. From some of the briefing on this issue, it appears that the deposition testimony at issue may simply have been speculation as to whether the car went faster than the speedometer indicated because it had good tires, and not a statement that he was not using cruise control or that he had set it higher than 65 miles per hour. Without the deposition transcript, we just cannot be sure what was said earlier.

accident, and the trooper responded "I found the guardrail had been impacted by the Cavalier." Plaintiff's counsel again objected based on *lack of foundation and lack of responsiveness*, and the objection was again *sustained*. Plaintiff's counsel did not object that the testimony invaded the province of the jury, nor did he ask for further relief such as striking the answer or a mistrial.

The trooper then testified that his accident investigation training taught him to look for debris at an accident scene, and that he found debris associated with these vehicles at the scene. Plaintiff's counsel objected to these general statements, arguing, "lack of foundation. He's already said he's not a reconstruction expert." The court overruled these objections. The trooper then testified that he found part of the deceased's Cavalier smashed into the guardrail, specifically, part of the front grill and bumper were wrapped around the guardrail post, in the area of the scuff marks, and he found paint and chip marks from the Cavalier.

The portion of the testimony now objected to on appeal then occurred:

Def. Counsel: Did you find debris which you associated with the Chevrolet?

Trooper: Yes. I did.

Def. Counsel: What type of debris are we talking about?

Trooper: It would have been part of the front of the vehicle that was left at the impact with the guardrail.

Pl. Counsel: I object to that, your Honor. Lack of foundation.

The Court: Overruled.

Later, the trooper testified to where he found pooled water, over objection that it called for speculation, and testified that the debris he found on the guardrail was from the Chevrolet Cavalier, over objection as to "lack of foundation." The trooper then explained that he knew the debris was from the Chevrolet because he compared it with the vehicle, something his training had qualified him to do. However, when defense counsel finally asked the trooper to give an opinion as to whether the deceased had died from hitting the guardrail or from being hit by Mr. Ethridge's car, the court sustained plaintiff's objection that there was a lack of foundation because the trooper was not qualified to give that type of expert opinion.

As is evident from this extended summary of the trooper's testimony, the basis of plaintiff's objections that the trooper's testimony lacked foundation was his complaint that the trooper was being asked to give testimony as an accident reconstruction expert, when he admitted he was not qualified as an accident reconstruction expert. The court overruled the objection when the trooper was being asked to describe his qualifications and training to investigate accidents, and when he gave factual testimony as to what he observed at the scene of the accident and in the surrounding area, but sustained objections which called for expert opinion in areas as to which he had not indicated he had been trained.

The trial court did not err in these rulings. Despite the general rule against point of impact testimony, courts generally allow testimony of an officer's observations at the scene of an accident regarding gouge, scuff, and scrape marks, for there is a distinction between expert testimony on point of impact and lay testimony on point of impact. As we recently stated in *Peterson v. National Carriers, Inc.* 972 S.W.2d 349 (Mo. App.1998):

> While Missouri does not permit an expert witness to offer his or her expert opinion as to the point of impact, *Williams v. McCoy*, 854 S.W.2d 545, 552–53 (Mo.App. 1993), Missouri does not prohibit a fact witness from testifying to point of impact. Rather, a lay witness 'may testify to what he hears, feels, tastes, and smells, as well as [to] what he sees.'" *Williams*, 854 S.W.2d at 553, *quoting*, 97 C.J.S. *Witnesses* § 53 at 442 (1957). This includes perceptible facts which tend to show where an accident occurred, or, in other words, point of impact testimony.

*Id.* at 356. *See also, Fieser v. Snyder*, 797 S.W.2d 752, 754 (Mo.App.1990).

That is what Trooper McMillen was doing here. As in *Williams*, Trooper McMillen testified as to his eyewitness observations about the location of such evidence as scuff

marks, debris and vehicle damage. While at one point the trooper did use the word "impact," he never testified as to the point of impact of the deceased's car with that of Mr. Ethridge, or as to the cause of that impact. He only testified that he observed part of the deceased's Chevrolet Cavalier was smashed into the guardrail post some 100 feet north of where the car ultimately came to rest. This was factual testimony which the jury needed to assist it in making the determination why the Cavalier was in the middle of the road with no lights on, and whether the deceased died as a result of being hit by Mr. Ethridge, or was already dead due to hitting the guard rail.

Plaintiff was in effect trying to keep out all evidence which could support a finding that her husband had hit the guardrail before his car was hit by Mr. Ethridge's car. This would not have been proper for it would have misled the jury as to the facts of the accident. While witnesses may not invade the province of the jury in determining who was negligent or where impact occurred, the jurors must be given the relevant facts from which they can make these determinations. Here, the deceased died at the scene, and Mr. Ethridge was immediately transported to a hospital. No autopsy was done, and no photographs of the scene were taken. Therefore, it was essential that the trooper's first-hand observations be admitted so that the jury had sufficient facts to determine the issues submitted to it. If all of plaintiff's objections had been sustained, the jury would never have been told important facts which they had to consider in determining why the deceased's car was sitting across the lane of the highway, and whether defendant caused the deceased's death and was negligent in so doing.

We do agree with plaintiff that the trooper should not have used the word "impact" in his testimony. However, it is clear from the context, set out above, that he was not using it as a term of art, or as a matter of expert opinion, but rather to factually describe the point at which he found portions of the Chevrolet Cavalier on the guardrail. Those portions of the vehicle were in fact in contact with the guardrail at that point, and that is all the trooper was saying. He had a factual foundation for this testimony, and for that reason the trial court did not err in overruling the objection. No objection was made that the testimony invaded the province of the jury to determine point of impact, but even if it had been, a single use of the word impact in a factual manner such as this could not have prejudiced the jury or affected the verdict.

For these reasons, the judgment is affirmed.

Chief Judge PATRICIA BRECKENRIDGE, Presiding, and Judge JAMES M. SMART, concur.