

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) |
| | )   **WD78199** |
| v. | ) |
| | )   **OPINION FILED:** |
| | )   **January 19, 2016** |
| ROBERT JOHNSTONE, | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Grundy County, Missouri
The Honorable Terry A. Tschannen, Judge**

**Before Division Three:** Joseph M. Ellis, Presiding Judge, and
Karen King Mitchell and Gary D. Witt, Judges

Robert Johnstone appeals, following a jury trial, his conviction of first-degree child molestation, under § 566.073,[1] for which he was sentenced to five years' imprisonment. Johnstone argues that the trial court erred in both excluding the victim's deposition from evidence and overruling his motion for new trial based upon alleged juror misconduct. Finding no error, we affirm.

---

[1] All statutory citations are to the Revised Statutes of Missouri 2000, as updated through the 2012 Cumulative Supplement, unless otherwise noted.

**Background**

During the summer of 2013, Victim (then eight years old) spent the night at a friend's house. Unbeknownst to either Victim or her mother, the friend's mother left the home during the night, leaving Johnstone—a stranger to both Victim and her family—alone to supervise the children. At some point during the night, Victim was awakened by Johnstone running his hand up her leg and touching her vagina with his fingers. Victim later reported this incident to her grandmother, who relayed the information to Victim's mother. Johnstone was eventually arrested and tried for one count of first-degree child molestation.

After the incident and before trial, Victim was interviewed and questioned by several individuals, including Johnstone's counsel during a deposition conducted on Johnstone's behalf. Various details in Victim's recitation of events left it unclear how many times Johnstone touched her and where in the house the touching occurred. At trial, Johnstone sought to admit Victim's deposition in its entirety to demonstrate the various inconsistencies and impeach her credibility. Johnstone's argument was two-fold: (1) that the deposition was admissible under § 491.075 as a statement of a child under fourteen; and (2) that the deposition was admissible under the "rule of completeness." The court rejected both arguments, but allowed Johnstone to use any portions of the deposition he wished to introduce in order to impeach Victim. The jury found Johnstone guilty as charged and recommended a sentence of five years in prison.

After Johnstone was convicted, but before sentencing, Johnstone filed a motion for new trial, claiming that Juror 15 had engaged in intentional nondisclosure by failing to advise the court during voir dire that: (1) she knew Johnstone; and (2) she had close family members that had been victims of sexual abuse. The court received testimony from Juror 15, but denied

Johnstone's motion without any findings of fact. The court sentenced Johnstone to five years' imprisonment. Johnstone appeals.

## Analysis

Johnstone raises three claims on appeal. In Points I and II, Johnstone challenges the trial court's decision to sustain the State's objections to admission of Victim's deposition when Johnstone sought to admit it in its entirety. In Point III, Johnstone argues that the trial court erred in overruling his motion for new trial because Juror 15 engaged in intentional nondisclosure when she failed to advise the court during voir dire that: (1) she knew Johnstone; and (2) she had close family members that had been victims of sexual abuse. We will address Points I and II together.

### A. The trial court did not err in sustaining the State's objections to admission of Victim's deposition in its entirety.

Before trial, Johnstone filed a notice of his intent to use Victim's statement at trial pursuant to § 491.075.[2] Johnstone sought to admit Victim's deposition, in its entirety, under the statute as a statement of a child under the age of fourteen. Johnstone advised the court that he wanted the deposition admitted as an exhibit so that the jury could review it during deliberations if they wished. The trial court denied Johnstone's request to admit the deposition, in its entirety, but ruled that he could use the deposition for impeachment purposes:

> [The] court overrules defendant's request to admit into evidence its entire deposition of the minor child at issue; rather the deposition shall be used for impeachment purposes during any cross examination of the minor child.

During trial, Johnstone first mentioned the deposition during cross-examination of Victim's mother by asking her a question about something Victim said during the deposition. The prosecutor then also referred to the deposition during redirect examination of Victim's

---

[2] Section 491.075.1 provides for the admission of out-of-court statements made by children under certain circumstances.

mother, asking specific questions about testimony Victim provided. Following redirect, Johnstone again sought to admit Victim's deposition, in its entirety, as an exhibit, under the authority of § 491.075. The court denied the request. Johnstone then sought to admit the deposition under the "rule of completeness," arguing that, because parts of the deposition had been read during cross and redirect examination, he was entitled to have the entire deposition admitted. The court again denied admission under the alternative theory. Johnstone now claims that both rulings were erroneous.

### 1. Standard of Review

"'The standard of review for the admission of evidence is abuse of discretion.'" *State v. Perdomo-Paz*, 471 S.W.3d 749, 756 (Mo. App. W.D. 2015) (quoting *State v. Steele*, 314 S.W.3d 845, 850 (Mo. App. W.D. 2010)). "A trial court abuses its discretion only if its decision to exclude evidence is 'clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration.'" *State v. Taylor*, 466 S.W.3d 521, 528 (Mo. banc 2015) (quoting *Mitchell v. Kardesch*, 313 S.W.3d 667, 675 (Mo. banc 2010)). "Evidentiary error is reviewed 'for prejudice, not mere error,' and error is only prejudicial if the court's error affected the outcome of the trial with 'reasonable probability' and deprived the defendant of a fair trial." *Id*. (quoting *State v. Clark*, 364 S.W.3d 540, 544 (Mo. banc 2012)).

### 2. The court did not err in overruling Johnstone's request to admit the deposition under § 491.075.

Under § 491.075, out-of-court statements made by a child are admissible in the following circumstances:

> 1. A statement made by a child under the age of fourteen, or a vulnerable person, relating to an offense under chapter 565, 566, 568 or 573, performed by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

4

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2)(a) The child or vulnerable person testifies at the proceedings; or

    (b) The child or vulnerable person is unavailable as a witness; or

    (c) The child or vulnerable person is otherwise physically available as a witness but the court finds that the significant emotional or psychological trauma which would result from testifying in the personal presence of the defendant makes the child or vulnerable person unavailable as a witness at the time of the criminal proceeding.

Here, Johnstone argued that the statutory requirements were met and, therefore, the deposition should have been admitted. Indeed, Victim was under the age of fourteen when the deposition was taken, the offense arose under Chapter 566, the testimony was likely otherwise inadmissible hearsay, and Victim testified at trial. That being said, it does not appear that there were sufficient indicia of reliability surrounding the statements made during the deposition. Johnstone argues that the simple fact that the statements occurred during a deposition provided sufficient indicia of reliability. We disagree.

Ordinarily, the question of whether a statement bears sufficient indicia of reliability requires a court to examine the totality of the circumstances. *State v. Barker*, 410 S.W.3d 225, 232 (Mo. App. W.D. 2013). "In evaluating the totality of the circumstances, the court considers a non-exclusive list of factors, including: '(1) spontaneity and consistent repetition; (2) the mental state of the declarant; (3) the lack of motive to fabricate; and (4) knowledge of subject matter unexpected of a child of similar age.'" *Id.* (quoting *State v. Wadlow*, 370 S.W.3d 315, 320 (Mo. App. S.D. 2012)). "'Interviewing techniques are also an important factor to be considered as part of the court's totality of the circumstances analysis.'" *Id.* at 232-33 (quoting *N.J.K. v. Juvenile Officer*, 139 S.W.3d 250, 258 (Mo. App. W.D. 2004)).

5

In *State v. Thompson*, 341 S.W.3d 723 (Mo. App. E.D. 2011), the Eastern District addressed the question of whether a child's deposition testimony was properly admitted under § 491.075. The defendant had deposed the victim's brother, and then the State sought to admit the deposition at the defendant's trial under the authority of § 491.075. *Id.* at 727-28. The defendant objected, arguing that the deposition lacked sufficient indicia of reliability. *Id.* at 728. On appeal, the Eastern District analyzed the above factors and determined that the deposition bore sufficient indicia of reliability. *Id.* at 729-30. Specifically, the court determined that the child's deposition testimony was consistent with both a videotaped Child Advocacy Center (CAC) interview and his trial testimony; though the deposition statement was not spontaneous, it was consistent with spontaneous statements the child had made during the CAC interview; there was no evidence suggesting that the child's mental state at the time of the deposition rendered his statements unreliable, nor was there evidence of any motive to fabricate; and the questions asked during the deposition were non-leading questions such that counsel's questioning techniques did not render the statements unreliable. *Id.*

Here, on the other hand, Johnstone's primary purpose in seeking to introduce the deposition was to impeach Victim with her inconsistencies and then provide the deposition to the jury as an exhibit during deliberations.[3] This rationale did not justify admission of the deposition in its entirety. First, for a statement to bear sufficient indicia of reliability under § 491.075, a primary factor for consideration is the consistency of the statement. But, by seeking admission to establish *in*consistencies, Johnstone has essentially conceded that this factor is absent. As noted by the court in *Thompson*, deposition testimony is not spontaneous; but the court excused

_____

[3] Even if the deposition had been admitted as an exhibit, the jury likely would not have been able to use it during deliberations. *See State v. Partain*, 310 S.W.3d 765, 768 (Mo. App. E.D. 2010) ("Generally, exhibits that are testimonial in nature cannot be given to the jury during its deliberation, for the reason that such exhibits tend to unduly emphasize some of the testimony, raising the possibility the jury would afford it undue weight.").

6

the absence of that factor because the deposition testimony in that case was consistent with previously made spontaneous statements. Again, however, Johnstone's argument is premised on the *in*consistencies within the deposition; thus, we cannot overlook the lack of spontaneity as the court in *Thompson* did. Third, there was evidence that Victim's mental state could have rendered some of her testimony at the deposition unreliable—namely, Victim, on several occasions, had to turn away from defense counsel in order to answer a question. Victim had her victim advocate with her and apparently had a lot of emotional difficulty with the situation. And, finally, unlike the questioning in *Thompson*, the questions asked of Victim were often leading questions, which could have easily affected the reliability of her responses. In short, Johnstone failed to demonstrate sufficient indicia of reliability to make Victim's deposition admissible in its entirety under § 491.075.[4]

Johnstone argues, however, that these factors are relevant only when *the State* is seeking to admit out-of-court statements under § 491.075 and that different considerations should apply when it is *the defendant* seeking to admit statements. Johnstone then argues that, because Victim's statements were made under oath, they are per se reliable for purposes of § 491.075. We find no support for either argument. The only portion of § 491.075 distinguishing between parties is subsection 3, which precludes admission "unless the prosecuting attorney makes known to the accused . . . his or her intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings to provide the accused . . . with a fair opportunity to prepare to meet the statement." The portion of the statute identifying the criteria for admission (subsection 1) makes no distinction between the parties whatsoever. But even if

---

[4] "As with any exception to the hearsay rule, the proponent of a child's out-of-court statement has the initial burden of making a sufficient showing of reliability to render the statement admissible." *State v. Porras*, 84 S.W.3d 153, 157 (Mo. App. W.D. 2002).

Johnstone's suggestion were correct, we are at a loss as to why we should eliminate the *reliability* factor from the analysis.

"[T]he reason § 491.075 allows the out-of-court statements of a child to be introduced in court as an exception to the hearsay rule" is because child victims are frequently "unable to testify effectively on the witness stand." *State v. Benwire*, 98 S.W.3d 618, 624 (Mo. App. W.D. 2003). "Section 491.075 'reflects a policy determination' by the legislature that[,] in some child abuse cases, *the victim's out-of-court statements may 'be* more *reliable than the child's testimony at trial*, which may suffer distortion by the trauma of the courtroom setting or become contaminated by contacts and influences prior to trial.'" *Id*. (emphasis added) (quoting *State v. Wright*, 751 S.W.2d 48, 52 (Mo. banc 1988)). Accordingly, the entire justification for admission of statements under § 491.075 is premised on the reliability of those statements. Thus, even if we accepted Johnstone's argument that different considerations apply when the defendant, rather than the State, seeks admission, those considerations would still require sufficient indicia of reliability—the one factor Victim's deposition testimony fails to satisfy here.

Furthermore, Rule 25.13 directly addresses the admissibility of depositions offered into evidence by defendants in criminal cases. That rule allows admission of depositions as exhibits only

> if it appears that the witness:
>
> **(a)** Is dead,
>
> **(b)** Is out of the state, unless it appears that the absence of the witness was procured by defendant,
>
> **(c)** Is unable to attend or testify because of sickness or infirmity,
>
> **(d)** Is a judge of a court of record or a practicing attorney or physician, and engaged in the discharge of an official or professional duty at the time of trial,

**(e)** Has invoked a testimonial privilege or other refusal to testify not produced by the action of the defendant, or

**(f)** Is otherwise unavailable and the defendant has made a good faith effort to obtain the presence of the witness at the hearing or trial, but has been unable to procure the attendance of the witness.

Rule 25.13.[5]

Here, Victim was plainly available and testified at trial. Thus, her deposition would have been inadmissible under Rule 25.13. And though § 491.075 makes out-of-court statements admissible where they would not otherwise be so, "if there is a conflict between [the Supreme] Court's rules and a statute, the rule always prevails if it addresses practice, procedure or pleadings." *State ex rel. Union Elec. Co. v. Barnes*, 893 S.W.2d 804, 805 (Mo. banc 1995); *see also* Rule 19.02 ("Rules 19 to 36, inclusive, are promulgated pursuant to authority granted this Court by Section 5 of Article V of the constitution of Missouri and supersede all statutes and court rules inconsistent therewith.").[6] Just as Rule 25.13 provides a procedure for admission of depositions, "[t]he first subsection of § 491.075 prescribes a *procedure* to be followed for an out-of-court statement to otherwise be admitted as substantive evidence." *State v. Hooker*, 791 S.W.2d 934, 935 (Mo. App. S.D. 1990) (emphasis added). Accordingly, to the extent they are inconsistent, the Rule prevails, and Victim's deposition was inadmissible.

3. **The court did not err in overruling Johnstone's request to admit the deposition under the "rule of completeness."**

Johnstone advances an alternative theory of admissibility—the rule of completeness. "This 'rule' holds that a party may introduce evidence of *the circumstances* of a writing, statement, conversation, or deposition so the jury can have a complete picture of the contested

---

[5] All rule references are to the Missouri Court Rules (2015).
[6] "In order to amend or annul a rule, the legislature must specifically refer to the rule in the statute." *State ex rel. Kinsky v. Pratte*, 994 S.W.2d 74, 76 (Mo. App. E.D. 1999). There is no reference to Rule 25.13 anywhere within § 491.075.

evidence introduced by the adversary." *State ex rel. Kemper v. Vincent*, 191 S.W.3d 45, 49-50 (Mo. banc 2006) (emphasis added). "This rule seeks to ensure that an exhibit is not admitted *out of context*." *State v. Jackson*, 313 S.W.3d 206, 211 (Mo. App. E.D. 2010) (emphasis added). "The adverse party is entitled to introduce or to inquire into other parts of the whole exhibit in order to explain or rebut adverse inferences which might arise from the fragmentary or incomplete character of the evidence introduced." *Id*.

There are two flaws in Johnstone's argument: first, he did not seek to admit evidence pertaining to *the circumstances* of the deposition at all, much less to provide any needed context; and second, application of the rule of completeness in the method Johnstone advocates has already been rejected by the Missouri Supreme Court in *Oldaker v. Peters*, 817 S.W.2d 245, 252 (Mo. banc 1991). In *Oldaker*, the appellants argued that the trial court erred in overruling their objection to the impeachment of a witness with only a part of his deposition. *Id*. The appellants claimed that "reading only an incomplete part of a deposition is misleading and confusing because connecting the omitted portions to the portions that were initially read, by means of a subsequent introduction in the trial, is essentially ineffective." *Id*. The Missouri Supreme Court rejected the claim, noting that "Missouri . . . has not adopted this rule." *Id*. Rather, the Court noted, "'the impeaching party need read only such *portion* of the document as tends to impeach the witness, leaving it to the opposing party to read the remainder insofar as it may tend to rehabilitate the witness.'" *Id*. (quoting *State v. Graves*, 182 S.W.2d 46, 53 (Mo. 1944)).

Here, Johnstone was permitted to read those portions of Victim's deposition needed to support his efforts to impeach her testimony. Thus, we find neither error nor resulting prejudice from the court's decision to sustain the State's objection to admission of the deposition as an exhibit.

10

Points I and II are denied.

## B. The trial court did not err in overruling Johnstone's motion for new trial.

In his third point, Johnstone argues that the trial court erred in overruling his motion for new trial, which alleged that Juror 15 engaged in intentional nondisclosure.

"Review of a trial court's denial of a motion for new trial alleging juror misconduct is for abuse of discretion." *J.T. ex rel. Taylor v. Anbari*, 442 S.W.3d 49, 58 (Mo. App. S.D. 2014). "'A trial court will be found to have abused its discretion when a ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.'" *Id.* (quoting *State v. Moore*, 366 S.W.3d 647, 652 (Mo. App. E.D. 2012)). "'If reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.'" *Id.* (quoting *Moore*, 366 S.W.3d at 652).

Johnstone argues that Juror 15 engaged in intentional nondisclosure when she failed to advise the trial court, during voir dire, that: (1) she knew Johnstone; and (2) she had close family members who had been victims of sexual abuse. We will address these alleged nondisclosures in turn.

"'In determining whether to grant a new trial for juror nondisclosure, the court must first determine whether a nondisclosure occurred at all' and, if so, whether the nondisclosure was intentional or unintentional." *State v. Ess*, 453 S.W.3d 196, 203 (Mo. banc 2015) (quoting *St. Louis Univ. v. Geary*, 321 S.W.3d 282, 295 (Mo. banc 2009)).

### 1. Juror 15 fully disclosed her knowledge of Johnstone in response to voir dire questioning.

During voir dire, the prosecutor asked if anyone knew Johnstone, and Juror 15 raised her hand and indicated that she knew him "generally." The prosecutor then stated, "I'm not going to

11

ask you how you know him, but anything about your knowledge or experience with the defendant make it difficult for you to listen to the evidence and be fair to both the defendant and the State here today?" Juror 15 responded, "No, ma'am." The prosecutor then asked, "So you think even though you know Mr. Johnstone, you can listen to the evidence as presented today, the jury instructions, and make a decision based on that and not on your knowledge of Mr. Johnstone?" Juror 15 stated, "Yes, ma'am." No further questions, by the prosecution or defense, were addressed to either the panel, generally, or Juror 15, specifically, regarding knowledge of Johnstone.

"A juror has a duty to answer all questions directed at him and the panel generally." *Prewitt v. Cofer*, 979 S.W.2d 521, 524 (Mo. App. E.D. 1998). Conversely, a juror "ha[s] no duty to respond to a question not directed to himself or the panel generally." *Id.* Here, Juror 15 fully answered the only questions posed regarding her knowledge of Johnstone. Though she testified at the motion for new trial hearing as to *how* she knew Johnstone, she was specifically directed during voir dire *not* to reveal how she knew him. "If a juror discloses everything that a voir dire question requires, no nondisclosure occurs." *Byers v. Cheng*, 238 S.W.3d 717, 721 (Mo. App. E.D. 2007). Accordingly, we reject Johnstone's claim that Juror 15 engaged in intentional nondisclosure regarding her knowledge of Johnstone.

**2. The trial court did not abuse its discretion in rejecting Johnstone's claim of intentional nondisclosure regarding information that Juror 15 had close family members that had been victims of sexual abuse.**

During voir dire, the prosecutor asked, "is there anyone that's had an experience in this type of case or a case involving sexual – allegations of sexual abuse of a child?" Juror 15 responded, "I went through a case when my daughter was nine. Well, she was 13 at the time.

12

She was nine when it happened." The prosecutor then had the following conversation with Juror 15:

[Q.] Was your daughter the victim?

[A.] Yes, ma'am.

[Q.] And did that case go to trial?

[A.] Yes, ma'am.

[Q.] And was there a verdict rendered?

[A.] Yes, ma'am.

[Q.] Was there a conviction?

[A.] Yes, ma'am.

[Q.] Anything about that experience make it difficult for you to sit here today and listen to the evidence involving allegations of child molestation?

[A.] Not after this many years.

[Q.] Has it been a number of years?

[A.] Oh, yes, ma'am.

[Q.] Again, I'm going to ask you, do you think you could sit today and listen to the evidence and make a decision based on the evidence and the instructions?

[A.] Yes, ma'am.

[Q.] And be fair to both the defendant and the State of Missouri?

[A.] Yes, ma'am.

Later in voir dire, the prosecutor asked, "has anyone here themselves or had a family member who has been a victim of a sex crime?" Juror 15 responded by raising her hand, and the following discussion occurred:

[Q.] Juror No. 15? You have previously discussed you had a child that was the victim of a sex crime?

[A.] Yes, ma'am.

[Q.] And, again, I will ask you, was there anything about that experience that would make it difficult for you to sit on the jury panel here today?

[A.] No, because it's been, like, 23 years ago, and I've had a lot of time to level out my feelings on fair and unfair.

[Q.] And do you believe that you could render a verdict here today based on the evidence only and not your past personal experience?

[A.] Yes, ma'am.

[Q.] And do you think you could – if you believe that the defendant was not guilty, you could enter a verdict of not guilty?

[A.] Yes, ma'am.

No further questions were directed at either the panel or Juror 15 regarding experiences involving family members that had been victims of sexual abuse.

During the hearing on Johnstone's motion for new trial, Juror 15 revealed that her granddaughter had made allegations of sexual abuse just before Johnstone's trial and that she took her grandchild to the Child Advocacy Center for an interview right after Johnstone's trial.

Johnstone argues that Juror 15's failure to disclose the abuse allegations made by her granddaughter constituted intentional nondisclosure. The trial court denied Johnstone's motion on this point without any findings of fact. On appeal, we "must assume that all facts were found in accordance with the result reached." *Gleason v. Bendix Commercial Vehicle Sys., LLC*, 452 S.W.3d 158, 172 (Mo. App. W.D. 2014); *see also Fielder v. Gittings*, 311 S.W.3d 280, 290 (Mo. App. W.D. 2010) ("Where the trial court rules on a party's motion for new trial without making specific findings, reviewing authority considers all findings necessary to the result to be implicit in the trial court's decision.").

14

"Evaluation of a nondisclosure claim involves two steps." *J.T.*, 442 S.W.3d at 56. "First, the reviewing court must determine whether the question was clear." *Id*. "If the question was clear, the court next considers whether the nondisclosure was intentional." *Id*. "If the nondisclosure was intentional, prejudice is presumed; if the nondisclosure was unintentional, the party seeking a new trial must prove prejudice." *Id*. We assume that, by denying Johnstone's motion, the trial court either found that there was no nondisclosure or that any nondisclosure was unintentional with no resulting prejudice to Johnstone. *See Fielder*, 311 S.W.3d at 290. Under either scenario, we find no abuse of discretion.

To begin, we first examine the questions the prosecutor asked Juror 15. Here, that question was: "has anyone here themselves or had a family member who has been a victim of a sex crime?" The question called for a "yes" or "no" kind of answer, wherein jurors who had such experiences self-identified, and those who had not simply did not respond. Juror 15 raised her hand in response to the question, indicating that either she or a family member of hers had been a victim of a sex crime. The question, as posed, sought no further details. Accordingly, by raising her hand, Juror 15 fully and completely answered the question asked. "If a juror discloses everything that a voir dire question requires, no nondisclosure occurs." *Byers*, 238 S.W.3d at 721.

After Juror 15 responded affirmatively to the question, as is customary, the prosecutor began to ask follow-up questions. But, in doing so, the prosecutor limited the scope of the questions to only the information that Juror 15 had previously disclosed regarding her daughter's experience. And Johnstone did not ask any follow-up questions on this matter during his voir dire. Thus, Juror 15 was never asked any questions that would have elicited the information Johnstone claims she failed to disclose. As noted above, a juror "ha[s] no duty to respond to a

15

question not directed to himself or the panel generally." *Prewitt*, 979 S.W.2d at 524. Yet that is exactly the duty Johnstone would have us impose upon venire panel members—the duty to disclose information not sought.

Even assuming, as Johnstone does, that Juror 15 was under some obligation to further clarify her response in the absence of proper follow-up questioning, we cannot say that the trial court abused its discretion in finding that any nondisclosure was unintentional.

"Intentional nondisclosure occurs: '1) where there exists no reasonable inability to comprehend the information solicited by the question asked of the prospective juror, and 2) where it develops that the prospective juror actually remembers the experience or that it was of such significance that his purported forgetfulness is unreasonable.'" *Geary*, 321 S.W.3d at 295-96 (quoting *Williams by Wilford v. Barnes Hosp.*, 736 S.W.2d 33, 36 (Mo. banc 1987)). "'Unintentional nondisclosure exists where, for example, the experience forgotten was insignificant or remote in time, or where the [venireperson] reasonably misunderstands the question posed.'" *Id.* (quoting *Williams*, 736 S.W.2d at 36). "The determination of whether the nondisclosure was intentional is reviewed for abuse of discretion." *J.T.*, 442 S.W.3d at 56.

Here, Juror 15 testified that she misunderstood the prosecutor's questions; she never claimed to have simply forgotten about the relevant information during voir dire (though she did have trouble during the motion for new trial hearing recalling the timeline). Accordingly, we must look at the record, including both the question asked and the surrounding context, to discern whether Juror 15's misunderstanding was reasonable.

At the hearing on the motion for new trial, Juror 15 testified that she understood the questions regarding family members that had been victims of sexual abuse to refer only to cases that had gone through the court system. Because the allegations made by her granddaughter had

16

not yet involved the police or a court case, she did not think the information was relevant to the questions asked. Juror 15 testified that she was not intentionally hiding anything.

"The reasonable interpretation of the question must be discerned from a review of the record sufficient to display the context of the question." *McBurney v. Cameron*, 248 S.W.3d 36, 44 (Mo. App. W.D. 2008). "The reasonable interpretation of the question 'depends on the context of the question as well as the wording of the question.'" *Id*. (quoting *Ewing v. Singleton*, 83 S.W.3d 617, 621 (Mo. App. W.D. 2002)).

Here, the first question asked, which elicited information from Juror 15 about her daughter, specifically referred to a "case."[7] Additionally, the follow-up questions were directed at whether the "case" went to trial and resulted in a conviction.[8] We think Juror 15's understanding that this question referred only to those instances involving investigation and prosecution was reasonable. Accordingly, her nondisclosure regarding allegations made by her granddaughter, which had not then gone through investigation or prosecution, appears to have been unintentional.

The second question, however, did not contain the same limiting language as the first. Rather than referring to a "case," the second question asked simply whether anyone "had a family member who ha[d] been a victim of a sex crime." We think this question *should* have elicited information from Juror 15 about her granddaughter's allegations. But when Juror 15 indicated that she had a response to the question, before she had the opportunity to speak, the prosecutor narrowed the scope of Juror 15's response by referring back to the case involving Juror 15's daughter.[9] Each follow-up question thereafter was focused on Juror 15's experience

---

[7] "[I]s there anyone that's had an experience in this type of case or a case involving sexual – allegations of sexual abuse of a child?"

[8] "And did that case go to trial? . . . And was there a verdict rendered? . . . Was there a conviction?"

[9] "Juror No. 15? You have previously discussed you had a child that was the victim of a sex crime?"

with her daughter. Thus, Juror 15 could have reasonably believed that the second question (involving family members), like the first (involving experiences), was limited to "cases" involving investigation and/or prosecution. "Confusion may result when counsel narrows the focus of the question." *Massey v. Carter*, 238 S.W.3d 198, 202 (Mo. App. W.D. 2007). Only one other juror responded to either question, and that juror's response involved personal experience and did not discuss whether there was investigation or prosecution. So there was nothing to dispel Juror 15's apparent misunderstanding that the questions were limited in scope. Accordingly, even if we would have reached a different conclusion, we cannot say that the trial court abused its discretion in finding Juror 15's nondisclosure to be unintentional. *See J.T.*, 442 S.W.3d at 58 ("'If reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.'" (quoting *Moore*, 366 S.W.3d at 652)).

"If the nondisclosure was unintentional, 'a new trial is not warranted unless prejudice resulted from the nondisclosure that may have influenced the jury's verdict.'" *State v. McFadden*, 391 S.W.3d 408, 418 (Mo. banc 2013) (quoting *Geary*, 321 S.W.3d at 295). "[T]he party seeking the new trial has the burden of proving prejudice." *Id*. "Prejudice is a determination of fact for the trial court, its finding to be disturbed on appeal only for abuse of discretion." *Williams*, 736 S.W.2d at 37.

At the hearing, Juror 15 testified that: she was not purposely hiding anything; when answering questions at voir dire, she believed she could be fair and impartial; and her "whole decision that [Johnstone] was guilty was [based] on [Victim's] testimony on the video and what she said [in the courtroom]." We presume the trial court found this testimony to be credible, *Fielder*, 311 S.W.3d at 290, and that is a finding to which we defer. *Doe v. Mo. State Hwy.*

*Patrol Crim. Records Repository*, ED 102092, 2015 WL 4911851, at *2 (Mo. App. E.D. Aug. 18, 2015).[10] Thus, Johnstone did not meet his burden of demonstrating prejudice. In short, we cannot say that the trial court abused its discretion in overruling Johnstone's motion for new trial on the basis of intentional nondisclosure.

Point III is denied.

## Conclusion

The trial court did not err in sustaining the State's objections to admission of Victim's deposition in its entirety. Nor did it err in overruling Johnstone's motion for new trial. Johnstone's conviction and sentence are affirmed.

_____
Karen King Mitchell, Judge

Joseph M. Ellis, Presiding Judge,
and Gary D. Witt, Judge, concur.

---

[10] We recognize that in other juror misconduct cases, "the statements of the jurors minimizing the effect of the misconduct [are] entitled to very little weight." *Travis v. Stone*, 66 S.W.3d 1, 6 (Mo. banc 2002). But they are given little weight in overcoming an *existing presumption* of prejudice. *Id.* ("the presumption of prejudice is so strong that it can rarely be overcome by statements of the juror tending to minimize the effect of this conduct."). Unlike other cases involving juror misconduct, cases involving unintentional nondisclosure do not presume prejudice, and prejudice must be proven by the party seeking a new trial. *J.T. ex rel. Taylor v. Anbari*, 442 S.W.3d 49, 56 (Mo. App. S.D. 2014).