Blake GWIN, BY AND THROUGH his next friend, C.D. GWIN, Appellant,

v.

CITY OF HUMANSVILLE, Missouri, Leonard Walburn, Rhonda Rogers and John Henry, Respondents.

No. SD 34552

Missouri Court of Appeals, Southern District, Division Two.

FILED: June 19, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied July 7, 2017

Appellant's attorney: Steven J. Blair, and Adam P. Pihana, Springfield.

Respondent's attorney: C. Bradley Tuck and Jennifer Dancy, Springfield.

DANIEL E. SCOTT, J.

Blake Gwin, age 4, visited a friend's home in Humansville. The boys were playing outside when a free-standing chimney, left from a fire four years earlier, collapsed and crushed them. Blake survived. He sued the city and several city officials,[1] lost at jury trial, and now appeals, charging juror misconduct and instructional error. We affirm the judgment, providing further

1. Mayor Leonard Walburn, police chief Darrell Lean, former mayor John Henry, and

background below as we address Gwin's three points.

### Point I—Intentional Juror Nondisclosure

#### Background

Sheila Day received, completed, and returned a juror questionnaire in the fall of 2015, answering #10 (hereafter "Question #10") as follows:

10. Are you presently employed? ☒ Yes ☐ No
If yes, state employer and occupation _CMH_
_Paramedic._
If no, state your last employer and occupation _____

Some five months later, Ms. Day was picked for the jury in this case, served as foreperson, and joined in the verdicts denying Gwin's claims.

After trial, Gwin's counsel learned that Juror Day had a LLC under which she offered holistic health and wellness coaching services, and that she voiced negative views on social media about vaccinations, the pharmaceutical industry, and some aspects of traditional medical practice. Gwin's new-trial motion claimed intentional juror nondisclosure because Juror Day had not listed her coaching services on the jury questionnaire.

After a hearing at which Juror Day testified, and without making specific fact findings, the trial court denied relief. Point I challenges this ruling and renews the charge that Juror Day intentionally refused to disclose her self-employment as a health and wellness coach when she answered Question #10.[2]

#### Legal Principles

■ "This Court will not disturb the trial court's ruling on a motion for a new trial based on juror nondisclosure unless the trial court abused its discretion," which means the ruling was so clearly illogical, arbitrary, unreasonable, and ill-considered as to shock the sense of justice. *Johnson v. McCullough*, 306 S.W.3d 551, 555 (Mo. banc 2010). Typically, we would first consider whether Question #10 was sufficiently clear, and if so, then whether Juror Day's nondisclosure was intentional, which in turn determines whether we presume prejudice or Gwin must prove it. *Id.* at 557; *Shields v. Freightliner of Joplin*, 334 S.W.3d 685, 691-92 (Mo. App. 2011). Yet it is simpler here to bypass the first step (question clarity) and go straight to the second (intent).

#### Analysis

■ Because the court made no specific findings in denying the new-trial motion on this issue, we must deem all facts as having been found in accordance with the

---

former alderperson Rhonda Rogers (collectively "Individual Defendants"). A directed verdict for Lean is not challenged on appeal.

2. Gwin abandoned a second complaint by wholly failing to develop it in the argument section of his brief. See *Whiteley v. City of Poplar Bluff*, 350 S.W.3d 70, 77 n.4 (Mo. App. 2011). Similarly, we decline to consider theories of error or prejudice asserted or developed only at oral argument.

result, including that Juror Day's nondisclosure was *neither* intentional *nor* sufficiently prejudicial to warrant a new trial.[3] We find no abuse of discretion because the record supports both findings.

Juror Day, the lone witness at the new-trial hearing, testified without contradiction that she didn't mean to deceive anyone. When she completed the juror questionnaire, she was working and earning money only as a CMH paramedic, which she listed. She had no wellness clients and no income as a wellness coach at that time. As she elaborated under questioning by Gwin's counsel:

> At that time I wasn't seeing any clients. I didn't know if I was going to continue pursuing that because I was having a difficult time getting started up. My school hosted a website for six months and we had to rebuild one after that, and I wasn't having a lot of luck and I was getting discouraged. So I wasn't considering myself employed as a health coach at that point.

We thus have no basis to override the implicit finding that any nondisclosure was unintentional. Given the circumstances, we cannot even brand Juror Day's answer to Question #10 unreasonable—let alone intentionally misleading—or outside the realm of foreseeable, good-faith responses by laypersons given scant space to write answers, no one to ask questions about the form, no knowledge of the type of cases they might hear as jurors, etc.

Nor can we credit Gwin's argument that Juror Day's presence deprived him of a fair trial, especially when Gwin admits "[i]t is unclear whether Juror Day shared [her] beliefs with the other jurors." Moreover, we read Gwin's prejudice argument as

speaking to *damages*, but Gwin lost on *liability. Cf. Frazier v. City of Kansas*, 467 S.W.3d 327, 342-43 (Mo. App. 2015) (when jury finds against plaintiff on liability, rulings on matters relating only to amount of damages recoverable *if* the defendant was liable cannot be deemed reversible error). To similar effect, *see also Rouse v. Cuvelier*, 363 S.W.3d 406, 422 (Mo. App. 2012); *Elmahdi v. Ethridge*, 987 S.W.2d 366, 367 (Mo. App. 1999); *Lush v. Woods*, 978 S.W.2d 521, 525 (Mo. App. 1998). Point I fails.

## Point II—Instructional Error (Verdict Directors)

 "Rule 70.03 requires that objections to instructions must be carried forward in the motion for new trial." *Hadley v. Burton*, 265 S.W.3d 361, 374 (Mo. App. 2008). Gwin objected at trial to three of the court's verdict-directing instructions, but did not carry those objections forward in his new-trial motion, so "that claim of error is not preserved for appellate review." *Id.*; *see also Hertz Corp. v. RAKS Hosp., Inc.*, 196 S.W.3d 536, 546 (Mo. App. 2006); *Williams v. Fin. Plaza, Inc.*, 78 S.W.3d 175, 181 (Mo. App. 2002).

 Seeking to rescue the point, Gwin notes brief verdict-director references in his new-trial suggestions on a different claim of error (Point III *infra*). That is not enough. Allegations in a new-trial motion "must be *sufficiently definite to direct the trial court's attention to the particular acts or rulings asserted to be erroneous*." *Bowman v. Burlington N., Inc.*, 645 S.W.2d 9, 11 (Mo. App. 1982). That is,

---

**3.** *See State v. Johnstone*, 486 S.W.3d 424, 435 (Mo. App. 2016); *Gleason v. Bendix Comm. Vehicle Sys., LLC*, 452 S.W.3d 158, 172 (Mo. App. 2014); *Fielder v. Gittings*, 311 S.W.3d 280, 290 (Mo. App. 2010); all involving claims of intentional juror nondisclosure in motions for new trial.

*they must always be direct and not left to be inferred from what is directly assigned.* The office of a motion for a new trial is to gather together the rulings complained of as erroneous, and solemnly and formally present them, one by one, in black and white to the judge in order that he have a last chance to correct his own errors without the delay, or expense, or other hardships of an appeal. This much is required. Less does not preserve the rulings for review.

*Id.* (quoting *Fruit Supply Co. v. Chicago B. & Q. R. Co.*, 119 S.W.2d 1010, 1011 (Mo. App. 1938)). "This principle is fundamental to our law of trial and appellate procedure and the Rules declare it is mandatory in character." *Id.* (citing Rules 78.07 & 84.13). A party thus cannot urge "on civil appeal any allegation of error not properly presented to the trial court in a motion for new trial, and any deficiencies in the motion may not be supplied by appellant's brief." *Id.* Point denied.

### Point III—Instructional Error ("Bad Faith" Definition)

█ Finally, we reject for want of prejudice Gwin's challenge to the following non-MAI "bad faith" definition:

INSTRUCTION NUMBER 15

The term "bad faith" as used in these instructions means more than bad judgment or negligence. While the term itself is not susceptible to concrete definition, it imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some

ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another. [4]

### Background

In seeking actual and punitive damages against the Individual Defendants, Gwin's petition alleged (1) that they "willfully and in bad faith" failed to abate the chimney as a nuisance under city ordinances; and (2) citing Missouri case law,[5] that conduct "willfully wrong or in bad faith is not protected by official immunity or public duty immunity."

At the instruction conference, the court rejected both parties' proposed verdict directors in favor of its own, which required jurors to find that any failure to abate the nuisance "was done in bad faith." The court also defined "bad faith" in Instruction 15, over Gwin's objection, which was preserved in Gwin's new-trial motion.

### Legal Principles

█ Whether to submit a definition instruction is a matter within the trial court's sound discretion. *Murphy v. City of Springfield*, 794 S.W.2d 275, 278 (Mo. App. 1990). When no MAI instruction is applicable, as here, we consider whether the instruction follows the substantive law and can be readily understood. *Id.* Even then, " '[i]t is not enough to show erroneous deviation unless prejudice also appears.' " *Id.* (quoting *Hudson v. Carr*, 668 S.W.2d 68, 71 (Mo. banc 1984)). Thus, "to

---

4. The court based Instruction 15 on *Blue v. Harrah's N. Kansas City, LLC*, 170 S.W.3d 466 (Mo. App. 2005), to which Gwin had cited the court and which states:

 Bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty

through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.

 *Id.* at 479 (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. banc 1986)).

5. *Southers v. City of Farmington*, 263 S.W.3d 603, 611-12 (Mo. banc 2008).

reverse a jury verdict on the ground of instructional error, it must appear that the offending instruction misdirected, misled, or confused the jury; and, the burden to prove the proposition rests with the party challenging the instruction." *Id.*

### Analysis

To quote Gwin's reply brief, "while the Trial Court would have been correct in submitting instructions based in part on *Blue*, [see footnote 3 *supra*] its verbatim use of the *Blue* definition of 'bad faith' was erroneous and should be reversed." We agree that Instruction 15 might have been improved; in particular, we share Gwin's view that a particular clause should have been omitted ("While the term itself is not susceptible to concrete definition …"). Yet prejudice, a different issue entirely, is Gwin's burden to prove. *Murphy*, 794 S.W.2d at 278.

▮▮▮▮ Gwin devotes nearly all of his argument to convincing us that Instruction 15 was a "roving commission," *i.e.*, so overbroad that a jury could impose liability where it should not do so.[6] Yet Gwin does not explain how this would prejudice him *as plaintiff*, rather than his opponents as defendants. In fact, Gwin's only apparent description of Point III prejudice is his claim to have been prejudiced "for the same reasons" as in his failed Point II.

▮▮▮▮ Ordinarily "we may consider closing argument in determining whether a contended instructional error had any prejudicial effect." *Thompson v. Brown & Williamson Tobacco Corp.*, 207 S.W.3d 76,

120 (Mo. App. 2006). We cannot do so here because Gwin has not furnished us any transcript of the closing arguments. *Compare State ex rel. Missouri Highway & Transp. Comm'n v. Jim Lynch Toyota, Inc.*, 830 S.W.2d 481, 489 (Mo. App. 1992) (instructional error found, but failure to furnish transcript of closing argument precluded review of appellant's claim of prejudice; judgment affirmed). It was Gwin's duty as appellant to provide a record sufficient for this court to determine all questions presented. *Coulter v. Michelin Tire Corp.*, 622 S.W.2d 421, 437 (Mo. App. 1981). We deny Point III and affirm the judgment.

GARY W. LYNCH, P.J.—CONCURS

NANCY STEFFEN RAHMEYER, J.—CONCURS

---

**6.** A "roving commission" allows the jury to roam freely through the evidence and impose liability based on whatever facts suit its fancy or perception of logic. *City of Harrisonville v. McCall Serv. Stations*, 495 S.W.3d 738, 747 (Mo. banc 2016). It is an abstract instruction so broadly worded that the jury can find a verdict without being limited to any legal or

factual issues developed in the case. *McNeill v. City of Kansas City*, 372 S.W.3d 906, 909 (Mo. App. 2012). "To avoid a roving commission, the court must instruct the jurors regarding the specific conduct that renders the defendant liable." *Nagaragadde v. Pandurangi*, 216 S.W.3d 241, 247 (Mo. App. 2007).